# IN RE JASON S.*
## (4683)

HULL, SPALLONE and BIELUCH, Js.

Argued September 16—decision released November 4, 1986

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Mark D. Malley,* for the appellant (respondent mother).

*Jane S. Scholl,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert W. Garvey,* assistant attorney general, for the appellee (petitioner).

*Andre D. Dorval,* for the minor child.

*Thomas C. White,* for the natural father.

HULL, J. This case involves a petition of neglect[1] brought by the commissioner of the department of children and youth services (hereinafter DCYS). The trial court granted the petition and the respondent mother of the minor child appealed.[2] The respondent claims

[1] General Statutes § 46b-129 (a) provides: "Any selectman, town manager, or town, city, or borough welfare department, any probation officer, the Connecticut Humane Society, or the commissioner of human resources, the commissioner of children and youth services or any child-caring institution or agency approved by the commissioner of children and youth services, a child or his representative or attorney or a foster parent of a child, having information that a child or youth is neglected, uncared-for or dependent, may file with the superior court which has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for, or dependent, within the meaning of section 46b-120, the name, date of birth, sex, and residence of the child or youth, the name and residence of his parents or guardian, and praying for appropriate action by the court in conformity with the provisions of this chapter. Upon the filing of such a petition, except as otherwise provided in subsection (e) of section 17-43a, the court shall cause a summons to be issued requiring the parent or parents or the guardian of the child or youth to appear in court at the time and place named, which summons shall be served not less than fourteen days before the date of the hearing in the manner prescribed by section 46b-128, and said court shall further give notice to the petitioner and to the commissioner of children and youth services of the time and place when the petition is to be heard not less than fourteen days next preceding the hearing in question."

[2] There are four parties in interest in this action: the minor child, Jason S.; his mother, Camedeva V.; his father, James S.; and Camedeva V.'s live-in boyfriend, Allen T. As the parents of Jason S., Camedeva V. and James S. were initial parties to the action. Allen T. was permitted to intervene as an equitable party at interest under Practice Book § 1023 (l). That section provides in pertinent part that " 'Parties' includes: (1) The child who

that the court erred (1) in admitting out-of-court statements made by the minor child, Jason S., regarding his abuse, (2) in granting the petition when there was insufficient evidence presented, and (3) in allowing the questioning of two witnesses regarding a previous child abuse conviction of Allen T., the live-in boyfriend of Jason's mother.

The following facts could reasonably have been found by the court. On November 16, 1984, the commissioner of DCYS filed a petition in the Superior Court for Juvenile Matters, alleging that Jason S. was physically abused. At the time of the petition, Jason was seven years old. The petition alleged that on October 23, 1984, Jason was observed to have numerous welts and bruises on his arms, a large bruise and several smaller bruises on his leg, and a bruise and several scratches around his right eye. The petition stated further that on November 2, 1984, Jason had a "U" shaped bruise under his right eye. On November 14, 1984, he was observed to have scratches on his neck and red marks on his back. He complained at that time that his chest and buttocks hurt him. Allegations of physical abuse were corroborated by the principal, nurse and two teachers at the Edgewood School in Bristol, where Jason was a student.

is the subject of a proceeding and those additional persons as defined herein. (2) 'Equitable party at interest': Any person whose interest in the matter before the court is not of such a nature and kind as to entitle him to legal service as a prerequisite to the court's jurisdiction over the proceeding but whose participation therein, at the discretion of the court, may promote the interests of justice. This definition may include but is not limited to any father or mother, natural, adoptive or putative, or any parental surrogate, whose legal status denies him the parental rights which are equated with guardianship of the child's person, and he may in any proceeding before the court be given notice thereof in any manner reasonably appropriate to that end, but no such 'equitable party at interest' shall be entitled, as a matter of right, to provision of counsel by the court."

Camedeva V. is the appellant in this action.

A preliminary hearing was held on the petition on November 26, 1984, at which time the court ordered that temporary custody of Jason be given to the commissioner of DCYS. In March of 1985, the neglect petition was amended to add further allegations of abuse. The allegations of the petition were amended to include statements allegedly made by Jason to a social worker and others to the effect that Allen T. had beat him, kicked him, urinated on him and forced his finger into a pencil sharpener.

The trial was commenced on September 19, 1985. At that time, the court took judicial notice of a separate neglect petition filed in 1983, and of the finding contained therein that Allen T. had abused Jason. The result of that proceeding was that Jason was temporarily removed from his mother's home. He was restored to her care four months before the petition in the present case was filed.

In the present case, the state presented several witnesses in support of its allegations of abuse. Jason's teacher and the principal of the school testified that they saw various cuts and bruises on Jason's face and body. The social worker who became involved in the case at the principal's request testified to similar observations.

Jason apparently changed his story as to the cause of his injuries at least once. School and DCYS witnesses testified that Jason initially blamed his dog for some of the injuries, blamed school children for others, and blamed his mother for still other injuries. The social worker then testified that Jason had changed his story and blamed Allen T. for virtually all of his injuries. A psychiatrist at Riverview Hospital For Children, where Jason was admitted in February, 1985, testified that Jason told him that he had been abused by a man in

his mother's home. Jason said the man had urinated on him, put cigarettes out on him, and forced him to kneel on grated shelving. The psychiatrist testified that Jason's statements remained consistent throughout his stay. The director of a foster care program into which Jason was placed after his stay at Riverview Hospital testified that Jason had given her reports similar to those he had given the psychiatrist.

Jason also testified after being called as a witness by his mother. Jason told the court that Allen T. beat him with a belt every day, punched him and gave him marks and bruises "from head down." Jason stated that he would like to go home, but that if Allen T. were there he would want someone else to stay there also.

Jason's mother, Camedeva V., testified that Allen T. had never hit or disciplined Jason. She blamed many of Jason's bruises on the dog, and had no answers for the cause of others. She did admit, however, that Allen T. had urinated on Jason. She claimed that he did this to help "toilet-train" Jason. Allen T. did not testify. Two of his friends did testify, however. Both testified that they had not seen Allen T. beat Jason. At that point in the trial, the petitioner introduced a child abuse conviction that a South Carolina court entered ten years earlier against Allen T. That information was admitted in the form of a question to one of the witnesses, asking him whether his opinion of Allen T. would be different if he had known of the conviction.

The court concluded that Allen T. had been abusing Jason for at least two years, and that Camedeva V. was too emotionally unstable to accept that fact. The court further held that until Camedeva V. could acknowledge the fact that her son had been abused by Allen T., there could be no reunion with Jason.

I

THE OUT-OF-COURT STATEMENTS OF JASON

The respondent's first claim of error refers to the admission of statements Jason allegedly made to others outside the courtroom. The statements Jason made to school personnel, social workers, the psychiatrist and the foster home supervisor were admitted at trial on two grounds. First, the court found that the statements were admissible as admissions of a party. The court also held that the statements were admissible as "verbal acts."

"An out-of-court statement that is offered to establish the truth of the matters contained therein is hearsay. *State* v. *Packard,* 184 Conn. 258, 274, 439 A.2d 983 (1981)." *State* v. *Stepney,* 191 Conn. 233, 249, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). "Among the recognized exceptions to the hearsay exclusionary rule is that for admissions of a party. *State* v. *DeMatteo,* 186 Conn. 696, 702, 443 A.2d 915 (1982); Tait & LaPlante, Connecticut Evidence (1976) § 11.5, p. 186; McCormick, Evidence (2d Ed. 1972) § 262, p. 628." *State* v. *Stepney,* supra, 250.

The respondent asserts that the court erred in admitting the out-of-court statements as "admissions of a party." She claims that the statements do not fit into this narrow exception to the hearsay rule. We agree. The crucial distinction between the cases cited by the state; *State* v. *Stepney,* supra; *Bonner* v. *Winter,* 175 Conn. 41, 44, 392 A.2d 436 (1978); *Fico* v. *Liquor Control Commission,* 168 Conn. 74, 77, 358 A.2d 353 (1975); *Perrelli* v. *Savas,* 115 Conn. 42, 43, 160 A. 311 (1932); and the present situation is that, in the cases cited, the statements are those of a party *opponent.* The excep-

tion applies exclusively to admissions of a party opponent. In the present case, the statements were introduced by the party who made them.

Further, the cases have held that the admission can be used only against the party who made it. *Palombizio v. Murphy,* 146 Conn. 352, 355–56, 150 A.2d 825 (1959); C. Tait & J. LaPlante, supra, § 11.5. The state's argument that the admissions are against Jason's interest is without merit. The allegation that the statements injured Jason are not persuasive when their only effect was to keep him out of a dangerous situation. Jason apparently has no desire to return to his mother's house under such circumstances, and the statements he made served to keep him out of that house until the conditions change.

The present case therefore does not fall within the party opponent exception to the hearsay rule. The statements were not made by a party opponent; they were made by the party introducing them. The statements were not used against the party who made them. Jason made the statements, and DCYS sought to introduce them for the benefit of Jason.

The alternate ground under which the statements were admitted is not an exception to the hearsay rule. The statements were admitted as "verbal acts." The verbal acts rule applies when statements are introduced purely to show that they were made, not for their truth. In support of the claim that the statements Jason made are "verbal acts," the state cites *In re Juvenile Appeal (85–2),* 3 Conn. App. 184, 485 A.2d 1362 (1985). In that case, the court allowed into evidence out-of-court statements of a three year old in which he threatened to "make love" to his sister and in which he told his aunt about being sexually abused. The statements were held admissible for purposes other than their truth. They were allowed as "verbal acts," to show only that the

three year old had an abnormal amount of knowledge about sex. "Those statements, totally apart from the truth of their content, were relevant to the conditions in which the children lived, if not to an inference of outright parental misconduct." *In re Juvenile Appeal (85–2),* supra, 191–92.

The statements of the child were important regardless of their truth. They were introduced to show that the three year old child was inappropriately aware of explicit sexual contact. The trial court in the present case made the following statement in an attempt to equate this situation with *In re Juvenile Appeal (85–2),* supra: "There have been details, whether he had his finger sharpened or not, it really is not the point. The point is he was physically abused."

The court's argument is circular. The purpose of the statements clearly was to show that Jason was abused. Unlike the statements in *In re Juvenile Appeal (85–2),* supra, Jason's statements have no value to the court apart from the truth of their content. They were offered in effect for the truth of the matter asserted, not merely to show that they were made. Thus, the statements are not admissible as "verbal acts."

The state lastly argues that Jason's out-of-court statements were admissible under *State* v. *Sharpe,* 195 Conn. 651, 491 A.2d 345 (1985). In *Sharpe,* the court stated that " 'hearsay may be admitted if there is a sufficient probability that the statement is reliable and trustworthy, if the evidence contained in the statement is necessary to resolution of the case, and if the trial court concludes that admitting the statement is in the interests of justice. 5 Wigmore, Evidence (Chadbourn Rev. 1974) § 1422, pp. 253–54. . . . ' *State* v. *Stepney,* [supra, 249–50]. The unique factual situation presented in this case does not fall neatly into one of the traditional exceptions to the hearsay rule. Therefore, our

analysis must focus on (1) whether there was a reasonable necessity for the admission of the statement, and (2) whether the statement was supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions. See *State* v. *Acquin,* 187 Conn. 647, 680, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); *State* v. *Reardon,* 172 Conn. 593, 598, 376 A.2d 65 (1977); Tait & LaPlante, Connecticut Evidence (1984 Sup.) § 11.25; see also Fed. R. Evid., rules 803 (24), 804 (b) (5)." *State* v. *Sharpe,* supra, 664–65.

The first test set forth in the *Sharpe* case was one of necessity. "Wigmore explains that the necessity requirement is met when, unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources. Wigmore, supra, § 1421." *State* v. *Sharpe,* supra, 665.

The out-of-court statements in the present case do not meet these requirements. The facts contained therein could not have been lost because the declarant recounted them to the court himself. Jason took the stand at trial and stated that he had been abused by Allen T. Further, the assertion is not of such a nature that evidence of the same value could not be obtained elsewhere. Evidence of the same value was obtained by the court when Jason took the stand.

Because Jason testified himself, the need required to meet the *State* v. *Sharpe* test is not present.[3] We

---

[3] While we see no need in the present case to extend *State* v. *Sharpe,* 195 Conn. 651, 491 A.2d 345 (1985), to cover this proceeding, we are not today holding that out-of-court statements made by a child in an abuse action will never be admissible.

therefore find that the court erred in allowing the introduction of the hearsay evidence in question. In view of the direct evidence of abuse, however, including the statements of Jason on the stand, the fact that Camedeva V. admitted that Allen T. had urinated on Jason, and the physical signs of abuse along with the inferences that can be drawn from that, we find the error harmless.

## II

### ADMISSION OF EVIDENCE OF PRIOR CONVICTION

The respondent claims that the trial court erred in admitting into evidence the child abuse conviction of Allen T. The evidence was admitted by the court for two purposes: to question two witnesses as to whether their favorable opinions of Allen T. would change with the knowledge that he had a prior conviction for child abuse, and to show Allen T.'s modus operandi of child abuse. The respondent challenges the admission only on the latter ground.

The petitioner asserts that this remaining claim of error was not properly preserved for review. The general rule is that an appeal will be limited to the claims of error raised at trial. *State* v. *McCall,* 187 Conn. 73, 84, 444 A.2d 896 (1982); *State* v. *Adams,* 176 Conn. 138, 144, 406 A.2d 1 (1978). The transcript reveals the following exchange between the parties. When the petitioner sought to introduce Allen T.'s prior conviction for purposes of modus operandi, the court allowed such introduction. The respondent then took an exception, and stated only that the conviction was too remote in time to be probative. She offered no other ground of objection. She failed to claim that the circumstances surrounding the two incidents did not have sufficiently unique characteristics, as she argued in her brief. Nevertheless, as she did preserve the claim on at least

one ground, we will consider the other related grounds. See *State* v. *Mitchell,* 169 Conn. 161, 168, 362 A.2d 808 (1975).

In *State* v. *Morowitz,* 200 Conn. 440, 444, 512 A.2d 175 (1986), the court held that testimony was properly admitted which revealed striking similarities between present accusations and past acts of sexual abuse. In *Morowitz,* the defendant, a podiatrist, was accused of sexually assaulting sedated female patients. The court held that the testimony of a witness who had a similar experience with the defendant was relevant to establish a common scheme. It stated that "[t]o establish a common design, the characteristics of the two offenses must be sufficiently distinctive and unique 'as to be like a signature.' McCormick, Evidence [3d Ed. 1984] p. 560; *State* v. *Mandrell,* 199 Conn. 146, 152, 506 A.2d 100 (1986); *State* v. *Braman,* [191 Conn. 670, 677, 469 A.2d 760 (1983)]." *State* v. *Morowitz,* supra, 443.

In *State* v. *Murrell,* 7 Conn. App. 75, 507 A.2d 1033 (1986), this court considered the question of when a prior act of misconduct is sufficiently unique to be admissible as modus operandi. In *Murrell,* the defendant was accused of breaking into an automobile in a Hartford parking garage and removing a radio and tape player. At trial, a witness for the state was allowed to testify concerning the defendant's prior involvement in an unrelated burglary of an automobile in a Hartford parking garage. On appeal, this court held that because the prior misconduct and the criminal act alleged did not share sufficiently unique features to warrant the inference that the defendant had committed both, and because the testimony did not have sufficient independent relevance as proof of a common scheme to warrant admissibility, the trial court erred in admitting that testimony into evidence.

"Our review of the trial court's ruling 'is limited to whether this ruling exceeded the latitude accorded to the exercise of judicial discretion. *State* v. *Falby,* [187 Conn. 6, 23, 444 A.2d 213 (1982). . . .' " *State* v. *Williams,* 190 Conn. 104, 108, 459 A.2d 510 (1983). An examination of the record in the present case reveals that, unlike the *Murrell* case, there are sufficiently unique features shared by the two incidents which would serve to connect the prior incidents of child abuse to the present allegations. In both cases, there were claims of cigarette burns to the abused child. This is a sufficient mark of similarity to justify the conclusion that it is at least a reasonable facsimile of the prior incident.

We conclude, therefore, that the court did not abuse its discretion in allowing the petitioner to introduce Allen T.'s prior conviction to show modus operandi.

### III

#### SUFFICIENCY OF THE EVIDENCE

The respondent's final claim is that there was insufficient evidence to support an adjudication of neglect. As we have stated repeatedly, it is the province of the trier of fact to weigh the evidence presented and to determine its credibility. *In re Christine F.,* 6 Conn. App. 360, 371–72, 505 A.2d 734, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986); *Burton* v. *Burton,* 189 Conn. 129, 138, 454 A.2d 1282 (1983). We have reviewed the record, however, to consider whether the court could reasonably have concluded that neglect was shown by a preponderance of the evidence. *In re Juvenile Appeal (84-AB),* 192 Conn. 254, 263, 471 A.2d 1380 (1984).

The trial court found that Jason was a neglected child by reason of being abused "within all the definitions of that term found in General Statutes § 46b-120: he has had physical injuries inflicted upon him other than

by accidental means; he has had injuries which are at variance with the history given of them; he is in a condition which is the result of maltreatment such as emotional maltreatment and cruel punishment."

The physical marks observed and reported by Jason's principal, his teacher, the social worker and the school nurse are strong evidence of neglect within the statutory definition. Testimony was given to the effect that the unexplained injuries stopped occurring when Jason was removed from his mother's home. There was testimony from a psychiatrist that Jason showed the psychological traits of an abused child.

The trial court took judicial notice of the prior adjudication of neglect and finding that Allen T. had been the cause of the prior abuse. That evidence was made more relevant by the fact that the same circumstances gave rise to the first and present adjudications. There was also evidence that Allen T. had been convicted of a similar but unconnected incident of child abuse upon his own child who was approximately two and one-half years old.

Jason also testified himself that Allen T. had abused him. While Jason contradicted his own testimony at an earlier hearing, the court took into account the fact that the previous hearing had been held with Jason's mother being present. "The resolution of conflicting testimony is within the exclusive province of the trial court." *Gaynor-Strafford Industries, Inc.* v. *Water Pollution Control Authority,* 192 Conn. 638, 647, 474 A.2d 752, cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984); *Gallicchio Bros., Inc.* v. *C & S Oil Co.,* 191 Conn. 104, 109, 463 A.2d 600 (1983).

In light of the evidence presented and the reasonable inferences drawn therefrom, the record contains

sufficient evidence, excluding Jason's out-of-court statements upon which the court could have found neglect.

There is no error.

In this opinion the other judges concurred.