STATE OF CONNECTICUT *v.* EDWARD A. DOLLINGER (7251)

SPALLONE, DALY and O'CONNELL, Js.

Argued October 12, 1989—decision released January 23, 1990

*William F. Gallagher,* with whom, on the brief, were *Joseph F. Buckley, Kerrie C. Dunne* and *Robert P. Borquez,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom were *Michael A. Pepper,* deputy assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, and *Cecilia Weiderhold,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals his conviction, after a jury trial, of the crimes of sexual assault in the

second, third and fourth degrees and of risk of injury to a child, in violation of General Statutes §§ 53a-71 (a) (1), 53a-72a (a) (2), 53a-73a (a) (1) (A) and 53-21, respectively. On appeal, the defendant claims that the trial court improperly admitted hearsay evidence, offered by third parties, of statements made by the infant victim, and that the court improperly denied various trial and posttrial motions. The defendant claims that the trial court erred (1) in ruling that the victim's statement identifying her abuser, made to a physician, was admissible under the medical treatment exception to the hearsay rule, (2) in ruling that the victim's statement identifying her abuser, made to her mother and to her mother's boyfriend, was admissible under the spontaneous utterance and residual exceptions to the hearsay rule, (3) in denying the defendant's motions for judgment of acquittal on the ground of insufficient evidence, and (4) in denying the defendant's motion to modify a protective order to permit supervised visitation with the victim. We find no error.

The jury could reasonably have found the following facts. The victim, V, was born on June 7, 1984, to Sandra Bondos Cherry and Joseph Dollinger, the defendant's brother. V was in the legal custody of and resided with her paternal grandparents from March, 1985 until October 4, 1986, when Cherry was awarded legal custody. Thereafter, V resided with her mother but was daily in the care of her grandparents while her mother was at work. Accordingly, the twenty-eight month old V was present in the grandparents' household during the first two weeks of October, 1986, from 6 a.m. until between 4:30 and 6 p.m. The defendant, Edward Dollinger, resided in the Dollinger household with V from March, 1985, through and including September, 1986, when he changed residences. Cherry, however,

observed the defendant at his parents' home on frequent occasions in October, 1986.

On the evening of October 7, 1986, V approached her mother's boyfriend, Randall Kristoff, as he emerged from the shower in Cherry's home and touched and blew on his genitals. When Cherry joined the two from her own shower, Kristoff asked V to "show mommy what you did." V thereupon pulled down Kristoff's pajamas and underwear, fondled his genitals, pulled the garments back up and said, "All better." V also removed Cherry's towel, rubbed Cherry's genital area and said that her mother was "all fixed up."

Cherry asked V who had showed her this and V answered, "Eddie." When asked what else she had learned, V took off her own clothes, lay on her back, spread her legs and fondled herself. To the best of Cherry's knowledge, the defendant was the only person that V knew named Eddie.

V was taken to her grandparents' home for day care on the next two days. On the evening of October 9, 1986, while changing V's diaper, Cherry noticed that V's vaginal area was bright red and sore and heard V complain of pain in the area. V was taken to the Griffin Hospital emergency room where she was examined by Ashokkumr Shah, a physician, who reported finding redness around the vulva and anus and an enlarged hymenal opening. Shah took V's medical history from Cherry and asked V, "What happened?" She responded by putting her finger in her vagina and then in her anus, and said, "Uncle Eddie did this."

At the defendant's trial, evidence was introduced on the sexual abuse of V and the identity of her abuser. V herself did not testify, having been judged incompetent to do so at a prior competency hearing. Police Officer Nancy Cabelus testified to an interview with V in

which V used anatomically correct dolls to demonstrate various acts of oral and vaginal sexual intercourse. The Griffin Hospital record of V's treatment was admitted into evidence and Shah was qualified as an expert on the identification of sexually abused children. He testified that, to a reasonable medical certainty, V's injuries were caused by sexual molestation. He stated that the injuries to the vulva and anus had occurred during the twenty-four to forty-eight hours prior to his examination of V, but he could not specify when the hymenal enlargement had occurred. Over the defendant's objections, Shah, Cherry and Kristoff were all permitted to testify as to V's statements to them on the identity of her abuser. The defendant was convicted on all counts and this appeal followed.

I

The defendant's first claim on appeal asserts that it was error to admit V's hearsay statements into evidence through the testimony of the doctor under the medical treatment exception to the hearsay rule. This long standing exception allows into evidence out-of-court statements made by a patient to a physician as long as (1) the declarant was seeking medical diagnosis or treatment, and (2) the statements are reasonably pertinent to these ends. *State* v. *Wood,* 208 Conn. 125, 134, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *State* v. *Maldonado,* 13 Conn. App. 368, 372, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988); C. Tait & J. LaPlante, Connecticut Evidence, (2d Ed. 1988) § 11.12.3.

Because statements concerning the cause of injury or the identity of the person responsible are generally not germane to treatment, they are not allowed into evidence under the medical treatment exception. We have, however, recognized an exception to that restric-

tion. "[I]n cases of sexual abuse in the home, hearsay statements made in the course of medical treatment which reveal the identity of the abuser, are reasonably pertinent to treatment and are admissible." *State* v. *Maldonado,* supra, 374. If the sexual abuser is a member of the child victim's immediate household, it is reasonable for a physician to ascertain the identity of the abuser to prevent recurrences and to facilitate the treatment of psychological and physical injuries. Id., 373–74.

In this case, the court ruled that V's statements to the doctor met the requirements of the *Maldonado* exception and so were admissible hearsay. The evidence supplied by Shah, by the hospital records and by Officer Cabelus supported the finding that the child had been sexually abused. The evidence supplied by the defendant's mother supported the finding that the Dollinger home was the principal residence of both V and the defendant between March, 1985, and October 1, 1986. The court further found that Cherry had taken V to the hospital for purposes of treatment.

The defendant does not dispute that V's identification of the defendant to the doctor was pertinent to treatment, but rather alleges that Cherry was not seeking medical treatment in bringing V to the hospital. The defendant claims that Shah provided no treatment of V and that Cherry's motive in bringing V to the hospital was an anticipated need for a medical witness for a subsequent criminal prosecution of the defendant and for her custody dispute with V's paternal grandparents. The defendant argues, therefore, that V's statements to the doctor were erroneously admitted into evidence. We disagree.

The medical treatment exception to the hearsay rule requires that the statements be both pertinent to treatment and motivated by a desire for treatment. In appro-

priate cases, all that is necessary to admit identification statements under the *Maldonado* exception is that the declarant's motive in making the statements be consistent with the purpose of obtaining medical treatment. *State* v. *Maldonado,* supra, 372. "Such a test ensures that the information being allowed into evidence was rendered with a guarantee of trustworthiness sufficient to justify an exception to the hearsay rule." Id. The rationale of the exception is that "the patient's desire to recover his health . . . will restrain him from giving inaccurate statements to a physician employed to advise or treat him." *Brown* v. *Blauvelt,* 152 Conn. 272, 275, 205 A.2d 773 (1964). The exception does not apply "where the physician is employed by the injured party merely to testify on his behalf." Id.

The test focuses on the declarant's motives. Even if V was too young to formulate consciously the motive of advancing her own health by being truthful with the doctor, the facts and circumstances here are consistent with that purpose. V's complaints of pain, coupled with the physical manifestations of injury could have led the doctor, an expert in child sexual abuse, to conclude that the child was aware of her discomfort and her need for medical attention. Like the three and one-half year old victim in *Maldonado,* V at nearly two and one-half years, was old enough to understand what she was being asked, and she responded in an age-appropriate manner without coaching. *State* v. *Maldonado,* supra.

Notwithstanding the defendant's speculations that Cherry employed Shah in anticipation of litigation, the court reasonably accepted that Cherry was seeking treatment when she brought her injured child to the hospital. The defendant has failed, therefore, to establish that the court abused its discretion in admitting

V's statements made to a treating physician on the identity of her abuser as a medical treatment exception to the rule against hearsay.

## II

The defendant next claims that it was error to admit V's hearsay statements into evidence through the testimony of Cherry and Kristoff. V's statements to her mother and her mother's boyfriend, identifying the defendant as V's abuser, were admitted under the excited utterance and residual exceptions to the hearsay rule. We agree with the defendant that the court erred in finding that V's statement qualified as an excited utterance, but we find that the statement was properly admitted under the residual exception.

## A

The excited utterance exception admits spontaneous statements made following a startling occurrence and relating to that occurrence. C. Tait & J. LaPlante, supra, § 11.11.1. " 'The ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation.' " *Mei* v. *Alterman Transport Lines, Inc.*, 159 Conn. 307, 315, 268 A.2d 639 (1970); *Cascella* v. *Jay James Camera Shop, Inc.*, 147 Conn. 337, 342, 160 A.2d 899 (1960). These are questions for the trial judge, and his conclusion controls unless it is an unreasonable exercise of discretion. *State* v. *Chesney*, 166 Conn. 630, 634, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974); *Bodak* v. *Masotti*, 14 Conn. App. 347, 353, 540 A.2d 719 (1988).

In this case, no foundation was laid for the admissibility of V's statement as an excited utterance. No testimony was presented to show that V's statement was

made "under circumstances of physical shock or nervous excitement . . . and before reasoned reflection had taken place." *Rockhill* v. *White Line Bus Co.,* 109 Conn. 706, 708, 145 A. 504 (1929). When V identified the defendant to Cherry and Kristoff, she did not appear to be in any distress. She acted playful and proud of what she had learned and the tone of her statement was more consistent with composure than excitement and spontaneity.[1]

Further, there is nothing in the record from which the court could have found that the startling occurrence and the statement were contemporaneous.[2] *Rockhill* v. *White Line Bus Co.,* supra (time interval is often decisive factor). The state argues that Shah's testimony that some of V's injuries were inflicted twenty-four to forty-eight hours before his October 9 examination of V provides evidence of the time factor, although the state did not refer to Shah's testimony when laying the foundation for the admission of V's excited utterance. Nor would it have been persuasive. On Shah's time estimate, the latest abuse had occurred sometime between October 7 and 8. V's October 7 statement, therefore,

[1] The state argues that children may manifest shock and excitement differently than adults, citing cases from a variety of jurisdictions illustrating a wide range of behavior that supported findings of excited utterances. These cases, however, all indicate that the child was under some degree of emotional distress. See, e.g., *People* v. *Foreman,* 161 Mich. App. 14, 20, 410 N.W.2d 289 (1987) (sleeplessness and bed wetting); *People in Interest of O. E. P.,* 654 P.2d 312, 318 (Colo. 1982) (prolonged crying); *State* v. *Ritchey,* 107 Ariz. 552, 556, 490 P.2d 558 (1971) (unusual and depressed conduct).

[2] The state again cites foreign cases to support its argument that the time between event and statement may be less important in child abuse cases. See, e.g., *People* v. *Foreman,* 161 Mich. App. 14, 410 N.W.2d 289 (1987) (one month interval); *State* v. *Noble,* 342 So. 2d 170, 172 (La. 1977) (two day interval). Connecticut courts have not so relaxed the requirement of temporal proximity; see *Rockhill* v. *White Line Bus Co.,* 109 Conn. 706, 708, 145 A. 504 (1929) (three minute interval too long); even with children's statements; see *Bodak* v. *Masotti,* 14 Conn. App. 347, 353, 540 A.2d 719 (1988) (twenty minute interval too long).

could have been made within hours of the latest abuse, or *on the day before the abuse.* Without a foundation that V's statement was made under the stress of and related to a recent startling event, the declaration is a "mere recital of a past event and [is] inadmissible . . . ." *Cascella* v. *Jay James Camera Shop, Inc.,* supra, 341.

## B

V's statement was admitted into evidence through Cherry and Kristoff on the alternative ground that it qualified as a residual exception to the hearsay rule. This exception admits into evidence statements that are technically hearsay and which do not fit within any traditional exception. *State* v. *Sharpe,* 195 Conn. 651, 664, 491 A.2d 345 (1985); *State* v. *Stepney,* 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); C. Tait & J. LaPlante, supra, § 11.25. Such statements are admissible provided that (1) there is a reasonable necessity for admission, and (2) there is an adequate basis to believe the statements are as reliable and trustworthy as other admissible hearsay. *State* v. *Sharpe,* supra, 665.

The necessity prong is met when the facts in the statement will be lost unless admitted as hearsay, either because the declarant is unavailable or because there is no equally probative alternative source. Id.; *In re Jason S.,* 9 Conn. App. 98, 106, 516 A.2d 1352 (1987); 5 Wigmore, Evidence (Chadbourne Rev. 1974) § 1421. The statement must also contain information necessary to the resolution of the case. *State* v. *Erhardt,* 17 Conn. App. 359, 368, 553 A.2d 188 (1989).

In this case, V was adjudged incompetent to testify and so was unavailable, and her statement was offered to prove an essential material fact, namely the identity of her abuser. Despite the defendant's claim that it was unnecessary to admit V's identification of the

defendant through Cherry and Kristoff because Shah had previously testified to a similar identifying statement, the court could reasonably have found that the statements were not equally probative. V's statement to Cherry and Kristoff was the first identification of the defendant under circumstances which lent the statement " 'particularized guarantees of trustworthiness' "; *State* v. *King,* 187 Conn. 292, 315, 445 A.2d 901 (1982); as required by the second prong of the test for admissibility.

This court has not previously had an opportunity to analyze the criteria for determining the reliability of hearsay statements by child abuse victims before admission into evidence under the residual exception.[3] This exception is not to be treated as a broad license to admit hearsay inadmissible under other exceptions, and is to be used very rarely and only in exceptional circumstances. *United States* v. *Medico,* 557 F.2d 309, 315 (2d Cir. 1977). The exception, however, is particularly well suited for the admission of statements by victims of child abuse and has been used in federal and state courts for this purpose. See, e.g., *United States* v. *Dorian,* 803 F.2d 1439 (8th Cir. 1986); *United States* v. *Nick,* 604 F.2d 1199 (9th Cir. 1979); *State* v. *Robinson,* 153 Ariz. 191, 735 P.2d 801 (1987); *Bertrang* v. *State,* 50 Wis. 2d 702, 184 N.W.2d 867 (1971). See generally Note, "A Comprehensive Approach to Child

---

[3] In *State* v. *Sharpe,* 195 Conn. 651, 491 A.2d 345 (1985), the statements admitted under the residual exception to the hearsay rule were made by an adult. The residual exception was offered as an alternative ground for admitting the child abuse victim's statements to the doctor in *State* v. *Maldonado,* 13 Conn. App. 368, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988), but this issue was not reached. The court in *In re Jason S.,* 9 Conn. App. 98, 516 A.2d 1352 (1987), found that because the child was available to testify, there was no necessity for admitting the abused child's hearsay statements under the residual exception. The court, however, noted that the residual exception might be appropriately used in other circumstances. Id., 106 n.3.

Hearsay Statements in Sex Abuse Cases," 83 Col. L. Rev. 1745 (1983). The victims are often unable to testify and their statements are often inadmissible, as here, under other exceptions to the hearsay rule. *United States* v. *Dorian,* supra, 1443; *State* v. *Robinson,* supra, 204–205.

In contrast to the excited utterance exception, the residual exception avoids the undue reliance on spontaneity and contemporaneousness as indicators of trustworthiness,[4] and considers several factors to be weighed for determining admissibility of out-of-court statements by child victims of abuse. These factors include the age of the child, the nature of the assault, the presence of physical evidence of that assault, the relationship of the child to the defendant, the spontaneity of the statement, the reliability of the statements themselves and the reliability of the testifying witness. *Bertrang* v. *State,* supra, 706–708.

We find V's statement to Cherry and Kristoff, under these criteria, to be reliable and trustworthy. This twenty-eight month old child demonstrated sexual behavior and knowledge inappropriate for her age, supporting the common sense judgment that she was not fabricating behavior she could have learned only from an adult. "[C]ommon sense suggests that '[s]ome of the most powerful potential evidence . . . lies in the child's prior out-of-court statements. When a child first reveals that there has been sexual abuse, the content and manner of the revelation is often striking in its clarity and ring of truth.' " *State* v. *Robinson,* supra, quoting G. Berliner & M. Barbieri, "The Testimony of Child Victims of Sexual Assault," 40 J. Soc. Issues 125, 133

[4] See Note, "A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases," 83 Col. L. Rev. 1745, 1756–57 (1983), for a discussion of why the prerequisites of spontaneity and contemporaneousness are particularly difficult to meet in admitting statements by child abuse victims under the excited utterance exception.

(1984). The simplicity, innocence and unselfconsciousness of V's behavior and identification of the defendant belie calculation or fabrication and carry just this ring of truth. See also *United States* v. *Dorian,* supra, 1445; *United States* v. *Nick,* supra, 1204.

V's identification of "Uncle Eddie" in response to Cherry's question may be considered spontaneous and reliable as long as there is no indication that V was coached, interrogated or otherwise prompted. See *People* v. *Straight,* 430 Mich. 418, 424 N.W.2d 257 (1988); *State* v. *Wallace,* 37 Ohio St. 3d 87, 524 N.E.2d 466 (1988). The reliability of V's statement to Cherry and Kristoff was corroborated by physical evidence. See *United States* v. *Nick,* supra. Moreover, the defendant had ample opportunity to cross-examine the testifying witnesses, Cherry and Kristoff, for whatever bias or ulterior motives the defendant alleges affected their credibility. See *United States* v. *Bailey,* 581 F.2d 341, 349 (3d Cir. 1978).

In light of the unavailability of the hearsay declarant, the probativeness of the statement, the presence of assurances of reliability and trustworthiness and the opportunity to examine the witnesses, we find that the court properly admitted V's identification of the defendant into evidence under the residual exception to the hearsay rule.

## III

That V's statements were admissible hearsay is dispositive of the defendant's third claim that the court erroneously denied his motions for judgment of acquittal. V's statements identifying the defendant as her abuser, made to Shah, Cherry and Kristoff, were properly put into evidence. Construing such testimony and all the other evidence in a manner most favorable to sustaining the verdict leads to the conclusion that the evidence was sufficient to justify the verdict of guilty

beyond a reasonable doubt. *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983); *State* v. *Melillo,* 17 Conn. App. 114, 117, 550 A.2d 319 (1988).

## IV

Finally, the defendant claims that the trial court erred in denying his motion to modify the protective order prohibiting contact between the defendant and the victim. After the defendant was convicted in this trial of sexually molesting his niece, V, and during the pendency of his appeal to this court, the defendant moved that the protective order be modified so as to permit supervised visitations between the victim and the defendant. The motion was premised on the ground that such visitation would be in the best interests of the child. After an evidentiary hearing, the court denied the motion and the defendant filed an amended appeal pursuant to Practice Book § 4006.

This allegation of error need not be discussed at any length. The party seeking a change of custody (here visitation rights) bears the burden of proving the change to be in the child's best interest. See *Kearney* v. *State,* 174 Conn. 244, 249, 386 A.2d 223 (1978). The defendant is a convicted felon, found guilty of sexually abusing the very victim with whom he seeks visitation rights. This factor alone is a sufficient basis to support the trial court's denial of the defendant's motion.

In summary, the trial court did not err in allowing the victim's testimony into evidence under the medical treatment and residual exceptions to the hearsay rule. In denying the defendant's motions for judgment of acquittal and for modification of the protective order, the trial court acted properly and in accordance with applicable law.

There is no error.

In this opinion the other judges concurred.