Memorandum of Decision
On February 13, 1999, the Department of Children and Families (DCF) took temporary custody of Bianca W. F., who is now almost eleven years old, Toni F., who is nine, and Nicole F., who is five and one-half. See General Statutes § 17a-101(c). On February 17, 1999, DCF filed petitions alleging that the three children were neglected by their father, Timme F., and mother, Tete F.[2] On February 19, 1999, the court entered an ex parte order of temporary custody, by which authority DCF currently retains custody of the children. A consolidated trial of the neglect petitions took place on June 7, 8, and 9, and July 1 and 2, 1999. For the reasons stated below, the court adjudicates the children neglected and commits the children to DCF custody for a period of one year.
ADJUDICATION
The petitions allege that all three children were neglected in that they were denied proper care and attention, physically, educationally, emotionally, or morally, pursuant to General Statutes § 46b-120(8)(B), were being permitted to live under conditions, circumstances or associations injurious to well-being, see General Statutes § 46b-120(8)(C), and were abused and have physical injury or injuries inflicted by other than accidental means. See General Statutes §§ 46b-120(3)(A) and46b-120(8)(D). The petition concerning Bianca alleges the additional ground that she was abused and has a condition which is the result of maltreatment such as, but not limited to, malnutrition, sexual molestation, or exploitation, deprivation of necessities, emotional maltreatment or cruel punishment. See General Statutes §§ 46b-120(3)(C) and 46b-120(8)(D)
DCF has the burden of proving these grounds by a fair preponderance of the evidence. Practice Book § 33-12. In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. Practice Book § 33-3(a). The adjudicatory date in this case is thus February 17, 1999.
DCF produced of great deal of largely hearsay evidence that the father sexually abused Bianca, and that the father and, to a lesser extent, the mother physically abused all three children. In sum, the evidence concerning sexual abuse showed that, for a period of time prior to October, 1997, the father engaged in CT Page 9091 twenty to thirty incidents of sexual touching, including manual penetration, of Bianca's vaginal and anal areas and some rubbing of her breast area. During at least one incident of sexual abuse, the other two girls were on the same sofa bed at the time, although apparently they did not see what had happened. These incidents stopped in October, 1997, when Bianca told her mother about them.
The evidence concerning physical abuse was that her father attempted to discipline Bianca on a number of occasions by hitting her with electrical cords and belts. On one occasion the father pushed her against a wall causing her mouth to bleed. On another occasion, the father threatened her with a knife. The mother hit Bianca on the hand with a coat hanger. According to Bianca, all the girls were hit with coat hangers and electrical cords. Toni was hit in the hands on two or three occasions with a belt. Nicole received spankings with belts and hangers. There was also general testimony from the children that the parents were hitting them too much or "abusing" them.
The central issue in the trial was whether to credit these statements.[3] The court has decided to do so. In addition to the other factors that led to the admissibility of the statements, see note 3 supra, the reason for crediting them was their repeated and corroborated nature. Bianca related the same account of sexual touching by her father, with varying degrees of detail, to two different DCF investigators, one of whom was accompanied by a state trooper, to her therapist, and to an examining pediatrician. To the same people, excluding her therapist, Bianca also gave accounts of being hit by her parents with instruments The pediatrician, who was an expert in the area of child abuse, testified that hyperpigmented marks on Bianca's left forearm and right thigh were consistent with the history of inflicted injuries with an instrument. The mother herself admitted to DCF that she had hit Bianca on the hand with a hanger. Bianca told one DCF investigator that she and her sisters were hit with coat hangers and electrical cords. Toni and Nicole both made statements about being hit with instruments to the other DCF investigator. Nicole added that she had seen her father push Bianca into a wall resulting in Bianca getting a bloody mouth or lip. Nicole made similar statements to the DCF case worker and general statements suggestive of abuse to her therapist.[4]
Given this evidence, which the court credits, the conclusion CT Page 9092 inescapably follows that the children were neglected. No dispute can exist that the father's sexual molestation of Bianca constitutes neglect and abuse of the most horrible sort. Equally obvious is the fact that the father's pushing Bianca into a wall or threatening her with a knife constitutes neglect and physical abuse. The court also finds that the parents' manner of disciplining all their children constitutes neglect. It is true that, under our law, a parent "entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor . . ." General Statutes § 53a-18(1). But the court believes that, in this country, the use of instruments such as a belt and particularly an electrical cord to discipline a child is excessive and improper. The court finds, based on this evidence, that DCF has proven all four grounds of neglect and abuse concerning Bianca[5] and has proven that Toni and Nicole were denied proper care and attention physically, emotionally, and morally. This evidence, when combined with the fact that the father molested Bianca with the other two girls in the same bed, also establishes that Toni and Nicole were being permitted to live under conditions, circumstances or associations injurious to their well-being.[6]
DISPOSITION
In the dispositional phase, the court may consider events occurring through the close of the evidentiary hearing. Practice Book § 33-5. DCF retains the burden of proof by a fair preponderance of the evidence based on the best interest of the child. Practice Book § 33-12.[7]
The evidence revealed that, through the close of the trial, the parents have not taken responsibility for their mistreatment of their children and they have not obtained counseling that the court had earlier recommended. The father in particular has been confrontational with several DCF workers and with the foster mother of Bianca and Toni. While a videotape of one of the supervised visits revealed the mother's conduct to be fully appropriate and caring, the father at times would inappropriately raise the topic of neglect proceedings and DCF custody in front of the children. The testimony convincingly established that the father made a practice of doing so during visits and monitored phone calls. CT Page 9093
Of grave concern is the father's use of racial slurs or derogatory racial references with DCF, occasionally during the phone calls with the children. Such racial comments obviously have no place in American society. To the extent that the father has used such comments in the presence of the children, they constitute a continuing form of neglect of the children's educational and moral needs. The evidence, in sum, revealed the father to be a very angry man, much in need of counseling and other state intervention.
All three children are in therapy. Bianca and Toni are doing well together in a foster home. Nicole is in a different foster home but sees her sisters once or twice a week. Bianca has not expressed any desire to go home. A criminal protective order, imposed after the father's recent arrest for the underlying sexual and physical abuse of Bianca, prevents the father from having any contact with her. Toni and Nicole have expressed a desire to return home.
Weighing this evidence, the court believes that the best interest of Bianca, Toni, and Nicole favor commitment to DCF for a period of one year. The fact that the parents have consistently visited and phoned the children and regularly expressed an interest in their well-being, although frequently in inappropriate ways, does leave open the possibility of eventual reunification. At this time, however, and until the parents have accepted responsibility for their actions and obtained counseling and other treatment, the parents, and particularly the father, would pose a continuing danger to children living in their home.
CONCLUSION
For the foregoing reasons, the court adjudicates the children neglected and commits them to DCF for a period of one year. DCF shall submit, for the court's approval, proposed specific steps consistent with those outlined during the trial.
It is so ordered.
Carl J. Schuman Judge, Superior Court
[2] Timme F. is the stepfather of Bianca W. F. and has been so throughout the period of time relevant to the neglect petitions. There was no evidence introduced concerning the natural father of CT Page 9094 Bianca.
[3] The children exercised their right not to testify. See Practice Book § 34-1(f). This fact, coupled with the emotional trauma associated with having young children come to court to testify concerning alleged abuse by their parents, created a reasonable necessity for admitting the children's out of court statements. See In re Lauren R., 49 Conn. App. 763, 778-30,715 A.2d 822 (1998); State v. Dollinger, 20 Conn. App. 530, 539-40,568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220
(1990). The court found most, although not all, of these statements to be reliable and trustworthy based on such factors as the calm or friendly disposition of the children at the time, their apparent willingness to talk, the professional or at least controlled atmosphere during the conversations, the repeated or corroborated nature of some of the statements, and the reliability and experience of the testifying witnesses. See State v. Dollinger, supra, 541. Based on these findings, the court admitted many of the children's statements under the residual exception to the hearsay rule. Id., 539-42. The court admitted other statements under the exception to the hearsay rule for statements made to a treating physician or therapist. See State v. DePastino,228 Conn. 552, 564-66, 638 A.2d 578 (1994); State v. Martin,38 Conn. App. 731, 739-40, 663 A.2d 1078 (1995).
[4] While these statements were considerable in volume and corroboration, DCF failed to offer other corroborating evidence that it apparently had. A state trooper testified that he took a written statement from Bianca and photographs of her bruises. A New Haven police detective stated that he took written notes of a second statement that Bianca gave. These items, if admitted, would have given the court more tangible evidence of what had occurred. DCF had no valid explanation for why it failed to offer these materials.
[5] At trial, DCF argued that, in order to prove that the children were "abused" within the meaning of the General Statutes, it is not necessary to prove that the parents were responsible for the physical and sexual abuse that took place. This position is untenable. If the child were molested by a complete stranger, the child might be found neglected because the parents failed to protect the child and denied her proper care, but the child could not fairly be adjudicated "abused" under the statute. It is only when the parent or guardian causes the abuse that such a finding can enter. In any event, in this case the CT Page 9095 court has found by a preponderance of the evidence that the parents did perpetrate the alleged abuse.
[6] Because there is no specific evidence of physical injury to Toni and Nicole, the court finds that DCF did not prove abuse to them under General Statutes §§ 46b-120(3)(A) and 46b-120(8)(D).
[7] Although the neglect statute and related Practice Book rules do not specifically state that the standard in deciding the appropriate disposition is the best interest of the child, the statute and rules explicitly make the best interest standard applicable to motions to revoke commitment or modify disposition. See General Statutes § 46b-129(m); Practice Book §§ 33-10 and 33-11. Logically, if the best interest standard applies to motions to revoke or modify dispositions, then that standard applies to the original imposition of disposition. See generallyIn re Juvenile Appeal (83-CD), 189 Conn. 276, 285, 455 A.2d 1313
(1983).