[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case began as an action for dissolution of marriage filed in 1998. The parties were married on June 5, 1982. Two children were born of this marriage: Brandon, born in 1990 and Paige, born in 1994. On September 28, 1998, a judgement of dissolution, which incorporated a separation agreement of the parties, was entered by the court (Zarella,J.) The court ordered joint legal custody of the children with the primary residence of the children to be with the defendant-wife. The defendant was also permitted to resume the use of her birth name of Young.
It is noteworthy that the original written dissolution agreement of the parties prohibited the defendant-wife from moving out of state without prior court approval. That provision of the agreement was crossed out and a new provision was handwritten and initialed by the parties. The handwritten agreement essentially provided that in the event either party intended to relocate so that the existing agreed upon visitation schedule would be disrupted, the other party would be given at least 90 days notice so that the parties would have sufficient time to implement a new visitation schedule. In the event they were unable to agree, either party could return to the court and seek a family relations mediation and court help to establish suitable changes to the existing agreement.
On February 28, 2000, the plaintiff filed two motions with the court. The first was a motion for modification of judgement regarding custody and visitation. The second was a motion for a temporary injunction to prevent the defendant from removing herself and the children from the State of Connecticut to the State of Washington until a decision on the motion for modification of custody and visitation was completed.[1]
On March 20, 2000, the court appointed an attorney for the minor children and, following a full hearing, denied the motion for a temporary injunction. The issues raised by the motion for change of custody and visitation were referred to family relations for a custody evaluation. (Klaczak, J.) The defendant moved to the State of Washington with the two children at the end of March 2000. They continue to reside in Washington as of the date of trial.
On December 4, 2000, the court (Graziani, J.) ordered a special hearing on the plaintiff's post judgement motion for modification of custody and visitation to be held on January 4, 2001. On that date the plaintiff, counsel for the plaintiff, counsel for the children and counsel for the defendant were present. The defendant was not present Testimony was received from the plaintiff and from Family Relations Counselor, Theresa Wassenberg, PhD.
Wassenberg testified as to her education, training and experience in CT Page 1045 the field of family studies and was qualified by the court as an expert witness in the field of family studies. The area of family studies involves the study of several interrelated disciplines including psychology and sociology.
Wassenberg was assigned to conduct the custody evaluation concerning Brandon and Paige Bliss on March 20, 2000. A family relations evaluation report (the report) was generated on November 8, 2000 and was admitted into evidence during the trial.
Based upon a careful evaluation of the evidence, a review of the prior proceedings in this case, of which the court takes judicial notice, and after assessing the credibility of the witnesses, the court finds the following facts to have been proven.
Dr. Wassenberg, whose testimony basically mirrored her written report, interviewed the parties and the children several times between April 3rd and August 3rd 2000. She also conducted numerous telephone interviews with collateral contacts. Her stated concern centers on the child management techniques of the mother, and much of her report deals with her review of investigations of the Connecticut Department of Family and Children (DCF) concerning reports of the mother yelling at Brandon and allegations of inappropriate discipline of the children by the mother. Most of these incidents are alleged to have occurred between August 1999 and November 1999. Each of the allegations was investigated by DCF and resulted in DCF findings that the claims of abuse or neglect were unconfirmed, unsubstantiated, or did not rise to the threshold required for DCF involvement. All of the investigations were closed without any action by DCF. On one occasion, after the mother admitted that she was under stress, the DCF worker recommended that she participate in anger management counseling. On no occasion was either child removed from the custody of their mother.
This is a family in which only the mother has acted as the disciplinarian of the children. During the course of the marriage the mother would discipline the children for their infractions and the father would comfort them. That apparently continues to this date. Mr. Bliss testified that when the children are with him he does whatever they want to do. That is generally a viable option for a non custodial parent, but not a full time custodial parent. It also sheds some light on why the children expressed a preference for being with their father. Mr. Bliss testified that the mother's behavior toward the children changed after the divorce, but that testimony is not supported by credible evidence. The report states that there existed "dramatically different parenting styles" between the parents, and some corporal discipline, long before the separation and divorce. (Pg. 3-4) CT Page 1046
The report also states that during the marriage Mr. Bliss tailored his work schedule so that he could be home to care for the children in the evening. He fed and bathed the children, and put them to bed nightly. What the report neglects to mention is that after Bliss left for work each morning, his wife would get the children up, get them dressed, make them breakfast, and get them to school. In the evening, Mr. Bliss would care for the children and Mrs. Bliss spent time at home working on matters relating to her employment. The court does not find that sharing of parental and employment responsibilities to be uncommon or unreasonable in contemporary society. It also does not necessarily reflect upon affection or parenting skills.
Wassenberg contacted the children's teachers in Renton, Washington in May 2000. The teachers reported no safety concerns for the children but said that the children found the move to Washington difficult and were sad for several weeks. Additionally, the children's Washington day care provider was contacted and had no concerns about the children, but also reported that Brandon was sad and missed his father after the move to Washington. There have been no follow up contacts made with the children's teachers or day care providers.
Two individuals listed as references by Ms. Young were contacted by Wassenberg in July and September 2000. Both had positive things to say about Ms. Young as a parent. One of the individuals indicated that Ms. Young suffered some stress due to the divorce and that she was a strict parent. The other individual stated that Young was a good mother and that the children liked their mother. Neither individual reported any knowledge nor incident of corporal punishment by Ms. Young.
Dr. Wassenberg believes that the children's emotional health is likely to suffer if the mother's parenting techniques do not improve. However, she also acknowledged that since she has not maintained contact with Ms. Young. the children, or any agency, institution, teacher or care giver in Washington over the past five months, she has no way of knowing or evaluating the children's current emotional status, or the extent of their adjustment to their current environment.
The party seeking a change of custody bears the burden of proving the change to be in the child's best interest. State v. Dollinger,20 Conn. App. 530, 543 (1990). In this case, the court does not have sufficient information from which it can determine whether a change in custody is in the best interest of the children. The children have been living in Renton, Washington for approximately ten months, yet, other than the telephone contacts referenced above, no individual, agency or institution has been contacted in the State of Washington concerning the CT Page 1047 children or their living situation. The plaintiff has provided the court with very little information from credible independent sources concerning the physical and emotional health, welfare, living situation, subsequent school adjustment, and well being of the children since their move to Washington. No home study has been requested of the Washington authorities. No inquiry has been made as to whether there have been any allegations of neglect or abuse in Washington. There is no evidence that the children have been psychologically evaluated to assess their emotional status. There has been no contact with the children's teachers since the beginning of the new school year in September 2000. There has been no contact with the children's physician to determine the state of their physical health. In brief, we know almost nothing of the environment in which the children now live, or how they have adjusted to their new home and school.
"It is well established that in a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. The credibility and the weight of expert testimony are judged by the same standard, and the trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . ." Powers v. Olson, 252 Conn. 98, 105 (2000). This court did not find the family relations custody evaluation report to be sufficiently complete, current, or compelling to support the plaintiff's claim there should be a change in custody. Additionally, after considering the evidence, and lack there of, the court did not find the conclusions and recommendations of the family relations counselor relating to the custody of the children to be persuasive.
The court finds that the plaintiff has not met his burden of proving that the interests of the children would be best served by transferring custody from the mother to the father and ordering the children to be returned to Connecticut. The evidence presented does not justify a change of custody which would once again uproot and disrupt the lives of these children. Accordingly, the motion for change of custody is denied.
The court also concludes that since the children and their mother have permanently moved to the State of Washington, and have now resided in that state for more than nine months, that state, and not Connecticut, may be the best and most convenient forum to determine custody issues should they arise in the future.
The other issue that needs to be resolved involves visitation. Under the circumstances visitation by the plaintiff will be difficult, but possible. Since it is in the best interest of the children that they maintain contact with their father, the previously issued visitation orders of the court are vacated and the following visitation schedule is CT Page 1048 ordered by the court.
1. The father shall be entitled to have both children visit with him in Connecticut over a period of four consecutive weeks (28 days) each summer. The children must be returned to their home state no later than the 15th day of August so they can have sufficient time to prepare for the new school year.
2. The children will spend alternate Christmas vacations with the parents. The Christmas vacation period shall be not less than from December 24 to December 28. The father will have the children with him for Christmas in odd number years beginning in 2001.
3. The children will spend alternate school spring vacations (if any) with the parents. The spring vacation period for visits with the father in Connecticut shall be not less than six consecutive days, including travel days. In order to make up for not having his promised visitation with the children over the 2000 Christmas vacation, the father will have the children for the 2001 school spring vacation (if any) and thereafter in even numbered years.
4. The father will be entitled to visit with the children in their home state, currently Washington, on any extended school holiday weekend during the school year, except during those Christmas and Spring vacations when they are with their mother. For a holiday celebrated on Monday, the visit will be from Friday evening at 6:00 p.m. until Monday noon. For a holiday celebrated on Friday, the visit will be from Thursday evening at 6:00 p.m. until Sunday at noon. He shall provide the mother with written notice, delivered by certified or registered mail, of his intention to exercise his right to a weekend visit no less than 20 days before the start of said visit.
5. The parties are ordered to equally share round trip transportation expenses for the visits of the children to Connecticut.
6. The father shall have the right to uninterrupted telephone contact with the children for a total time of no less than sixty minutes between the hours of 6:00 p.m. and 8:00 p.m. pacific time no less than once each week
All other orders previously entered by the court shall remain in effect.
Terence A. Sullivan Superior Court Judge