IN RE TAYLER F. ET AL.*
(AC 28345)

McLachlan, Harper and Lavery, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued March 20—officially released October 28, 2008

*Jon D. Golas*, for the appellant (respondent mother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, *Jason M. Lobo* and *Stephen G. Vitelli*, assistant attorneys general, for the appellee (petitioner).

*Sheila A. Huddleston*, with whom were *John H. Beers* and, on the brief, *Emily H. Wagner* and *Laurie A. Sullivan*, for the minor children.

*Opinion*

McLACHLAN, J. The respondent mother[1] appeals from the judgments of the trial court finding that her

---

[1] When the petitioner, the commissioner of children and families, instituted neglect proceedings in this case, the mother and father of the two children at issue were named as respondents. Because only the respondent mother has appealed, we refer to her in this opinion as the respondent.

two minor children were neglected. She claims on appeal that the court improperly admitted (1) testimony regarding whether the children should testify in court, (2) hearsay evidence of the children's statements, the statements of the children's father and other persons' statements, and (3) evidence of the children's credibility. Although we agree with the respondent that some of the evidence admitted was hearsay subject to no exception to the rule against hearsay, the admission of that evidence was harmless in light of the substantial evidence that was admitted properly during trial. Therefore, we affirm the judgments of the trial court.

The following facts and procedural history are relevant to the resolution of the respondent's appeal.[2] The respondent and the father divorced in 2001 and shared custody of their two minor children, Tayler F. and Nicholas F.

On December 7, 2004, an incident occurred between the respondent, her live-in boyfriend, William B., and the children when Tayler was eleven years old and Nicholas was nine years old. During the incident, the respondent was sitting on a couch when William B. disciplined Tayler by physically putting his hands on her shoulders, walking her to her bedroom and locking her in. As a result of the confrontation, Tayler did not want to remain in the respondent's house and the respondent was so upset that she did not know what to do. Tayler's maternal grandmother, Bonnie R., picked up the children for the evening to "let things rest and calm down a little bit."

On December 8, 2004, the father contacted the Enfield police department and related Tayler's account of the events. Officer Gregory Skop investigated the father's complaint by interviewing the father, the two children,

_____

[2] The facts are taken from the evidence that we determine was admitted properly by the court.

the respondent and William B. Tayler told Skop that she did "talk back" to William B. on December 7, 2004, and that he became angry with her, grasped her by the upper arms, walked her to her bedroom and told her not to leave her room. Tayler also stated that William B. did not injure her, but she heard him say, "f___king bitch," as he walked away from her door.

Tayler also reported that several months earlier, William B. and his friend, Chico, were drinking heavily at the respondent's house. Late that night, Tayler heard William B. screaming, came out of her room and saw William B. and Chico physically fighting. Tayler stated that she is always scared of William B. and sometimes afraid of the respondent. When asked to explain her statement, Tayler became physically upset and began to tear up.

Skop also interviewed Nicholas on December 8, 2004, and Nicholas became visibly upset and began to cry when asked about domestic violence in the respondent's home. Nicholas reported that he had seen the respondent kick William B. and had seen William B. slap and hit her. Skop stopped the interview so that he could calm Nicholas down.

Officer Skop did not initiate criminal charges against anyone as a result of his investigation, but he did report the results of his investigation to the department of children and families (department). Karen Dupuis, a department social worker was assigned to investigate the allegations of substance abuse, domestic violence, emotional abuse, physical abuse and neglect. Dupuis interviewed the father, the minor children and the respondent on December 10, 2004.

In her interview with Dupuis, Tayler reported that the respondent and William B. fight a lot. Tayler also informed Dupuis that she had seen the respondent and William B. physically fighting as recently as a week

before December 10, 2004. Tayler stated that the respondent and William B. throw cans at each other and slap, punch and kick each other. Tayler also reported that one night she saw Chico place William B. in a headlock and saw blood everywhere. Nicholas separately stated to Dupuis that he observed the fight between Chico and William B. and saw Chico choking William B.

Prior to the incident on December 7, 2004, there were times when both William B. and the respondent were so intoxicated that the children could not awaken either of them. Tayler reported to Dupuis that she sees the respondent and William B. drink Captain Morgan rum, Budweiser beer and vodka daily when she is at the respondent's house. Tayler added that William B. "acts weird and crazy and [the respondent] talks funny. That is also how I know they are drinking." Tayler also reported that the respondent and William B. sleep late and Tayler gets herself and her brother ready for school in the morning.

When asked by Dupuis about her drinking, the respondent stated that she does not drink every day and does not always become intoxicated when she drinks. She stated further that sometimes she does and sometimes she does not, but she does not see a problem if she drinks or becomes intoxicated if the children are asleep or staying with their father. In response to a question about her use of alcohol in front of the children, the respondent testified: "I mean have a glass of wine. [William B. and I] have beer when we're watching the game or whatever, but I mean, I don't think it's to the point of falling down, intoxicated drunk." Melissa D., the respondent's adult daughter from a previous marriage, testified that she had witnessed the respondent abuse alcohol during the six to eight month period prior to December 7, 2004. Melissa D. testified that she thought that the respondent used alcohol as a coping

method and an outlet and had abused alcohol for as long as she could remember.

Following Dupuis' initial investigation, the department placed the children on a ninety-six hour hold and transported them to their adult sister's home. See General Statutes § 17a-101g. On December 14, 2004, the petitioner, the commissioner of children and families, filed neglect petitions and motions for an order of temporary custody due to inadequate care, failure to provide a safe, stable and nurturing environment, emotional neglect, inadequate supervision and exposure to domestic violence. On December 14, 2004, the motions were granted ex parte by the court. The court sustained the orders of temporary custody on December 22, 2004, by the agreement of the parties.

In an interview with David M. Mantell, a clinical psychologist who had been ordered by the court to conduct psychological examinations, Nicholas stated that William B. and the respondent had hurt him in the past by dragging him and slapping him; Nicholas also stated that he had a rash around his neck when he was pulled. Nicholas also told Mantell that the respondent and William B. sometimes swear at him and Tayler and use "the a and b word[s]." Nicholas also reported to Mantell that he feels scared when the respondent and William B. drink and drive home because the car "bounc[es] when it hits bumps and [the car is] on the side of the road."

Tayler also stated to Dupuis that at the end of the summer of 2004, she "smelt something funny" and knew that it was not cigarette smoke because her father smokes cigarettes. The respondent testified that she had never used marijuana or cocaine in the past but admitted that in another proceeding, she had exercised her fifth amendment right against self-incrimination when asked about her marijuana and cocaine use.

A trial on the neglect petitions was held on several dates between November 4, 2005, and September 29, 2006. The children did not testify. The court found that the children had witnessed domestic violence between the respondent and William B., that the children had witnessed a "significant physical altercation" between William B. and Chico, that the children had suffered both verbal and physical abuse at the hands of the respondent and William B., that the children had witnessed substance abuse by the respondent and William B., and that the respondent had not provided proper supervision for the children. The court found that the children, as of the date of the petitions, were neglected, having been denied proper care and attention, physically, educationally, emotionally or morally, and had been permitted to live under conditions, circumstances or associations injurious to their well-being. The court ordered that the respondent and the father have joint custody of the children, that their primary residence would be with their father and that the respondent was entitled to a minimum of five hours of supervised visitation each week. Because of the number of evidentiary challenges, each of which is fact specific, we will address each claim separately and set forth additional facts pertaining to each challenge.

To evaluate the respondent's evidentiary challenges to the court's rulings, we begin with the applicable standard of review common to them. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing . . . of substantial prejudice or injustice. . . . Additionally, it is well settled that even if the evidence was improperly admitted, the [party challenging the ruling] must also establish that the ruling was harmful and likely to affect the result of the trial." (Internal quotation marks omitted.) *In re Stacy G.*, 94 Conn. App.

348, 353, 892 A.2d 1034 (2006). In order to prevail on her claims, the respondent must show that the court abused its discretion in admitting the challenged evidence and that any improper admission caused her substantial prejudice or injustice. See *In re Brandon W.*, 56 Conn. App. 418, 424–25, 747 A.2d 526 (2000).

I

The respondent first claims that the court improperly admitted the testimony of Dr. Mantell regarding whether the children should testify in court. Specifically, she claims that the testimony violated her due process rights because she was unfairly surprised by the testimony and unprepared to meet it.[3] We disagree.

Prior to the start of evidence on November 4, 2005, the parties presented argument about the respondent's motion in limine regarding hearsay. At that time, the petitioner's attorney, Jason M. Lobo, made an offer of proof that the children's therapist would testify that the children would be harmed if they testified against the respondent. Although Lobo did not refer to the therapist by name and the attorney for the father later referred to the therapist as "Mr. Daley," there is no question that the respondent knew on November 4, 2005, that the offer of proof was that a therapist would testify that the children would suffer harm if forced to testify. During testimony on November 4, 2005, the respondent repeatedly objected to the admission of the children's out-of-court statements because there had been no showing of unavailability. The respondent even requested that a hearing be held on any psychological reason that would make the children unavailable.

---

[3] The respondent also notes in her brief that she objected on relevancy grounds at trial. Because the respondent does not present any legal analysis or argument in her brief that Mantell's testimony was irrelevant, we deem that claim to be abandoned. See *State* v. *Linarte*, 107 Conn. App. 93, 104 n.6, 944 A.2d 369, cert. denied, 289 Conn. 901, 957 A.2d 873 (2008).

During the hearing on the orders of temporary custody on December 22, 2004, the court, per agreement of the parties, ordered a clinical evaluation of the respondent, the father, the children, Melissa D., William B. and Bonnie R. Dr. Mantell, a family therapist, performed the evaluation for the court and interviewed all of the parties over the course of several months. Mantell interviewed the children on February 23, March 9 and June 30, 2005. Although he was not specifically ordered to determine whether the children should be allowed to testify, Mantell was able to form an opinion based on his interviews. Mantell testified that the children would suffer harm if forced to testify because of their "young, tender age" and past overexposure to the Juvenile Court system. Mantell also testified that "there are open, gaping wounds" in the relationship between the respondent and her children, and when he witnessed the respondent confronting her children about their accusations, they would withdraw.

During cross-examination by the respondent, however, Mantell stated that "the last time I was here in court and before I came to court today, attorney Lobo asked me if I had an opinion on the subject, and I told him I did. . . . I was in this courtroom with counsel some time back, and I spoke to—maybe it was an informal conference with the parties? And I just remember it as testimony? But I certainly can tell you for sure . . . I was on this side, you all were on that side, and we discussed the issues that we're talking about today. And that was one of the issues that was discussed, that I said I didn't think it was a good idea. I would recommend against it." During cross-examination by the attorney for the children, Mantell testified that during the prior discussion about the appropriateness of having the children testify, "Attorney Lobo was here. You were here. Attorney [Jon D.] Golas [the attorney for the respondent] was here."

The respondent objected at trial that she was unable to prepare for Mantell's testimony because the report was based on clinical interactions and family relations, but did not state that Mantell had interviewed the children to determine whether they should testify in court. The respondent properly asserts that evidence may be unduly prejudicial when a party has "no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 321, 714 A.2d 686 (1998), quoting *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 193, 646 A.2d 195 (1994). The respondent argues that she had no notice that Mantell would testify that the children should not be allowed to testify and that, consequently, she could not prepare for cross-examination or challenge Mantell's testimony with an independent evaluation.

The respondent, however, was placed on notice that Mantell would testify about the harm the children would suffer if they were forced to testify against the respondent. The petitioner made an offer of proof that a therapist would testify regarding harm after the respondent put the availability of the children at issue. Mantell also testified that over four months prior to his testimony at trial, he had stated his opinion regarding the impact that having to testify in the presence of the respondent would have on the children. In addition, the respondent made no requests for additional time to prepare for cross-examination of Mantell, nor did she request an independent evaluation. Because of Mantell's discussion with the attorneys in the respondent's presence, we cannot conclude that she was unfairly surprised by Mantell's testimony.

## II

The respondent claims that the court improperly admitted hearsay evidence of the children's statements,

the father's statements and other persons' statements. Specifically, the respondent claims that the court improperly admitted several unredacted documents containing hearsay and the testimony of Dupuis regarding the children's statements.[4]

The following additional facts and procedural history are necessary to resolve these claims. The respondent filed a motion in limine on November 3, 2005, requesting the exclusion of "[a]ny [out-of-court] statements allegedly made by" the children as hearsay to which no exception applies. Prior to the start of evidence, on November 4, 2005, the court heard argument from the attorneys and an offer of proof from the petitioner that a therapist would testify as to the damage the children would suffer if forced to testify. The court denied the motion in limine without prejudice and twice instructed the respondent that she could raise objections on hearsay grounds as she believed necessary.

The petitioner called Skop as her first witness and offered his police report into evidence as a business record. The respondent objected on the ground that the document "contain[ed] numerous hearsay statements." The petitioner asserted that William B.'s statements were not being offered for the truth of the matter asserted but that the children's statements were being offered under the catch-all or residual exception. The

[4] The respondent did not object at trial to the admission of the various documents in their entirety, instead objecting to selected portions and offering redacted copies as exhibits for identification. Counsel for the respondent stated that he intended to make an appellate record by submitting the redacted copies for identification only and acknowledged that the trial court would not be permitted to review them. Although this procedure is at first glance appealing, because it allows an efficient line by line objection to be raised, it does not provide the court with additional information on which to ground its ruling. Indeed, some of the redacted copies were marked for identification months after the court's rulings. Thus, it cannot serve to preserve any objection not raised directly to the court. See State v. Simpson, 286 Conn. 634, 645, 945 A.2d 449 (2008).

petitioner claimed that the exception applied because the children were unavailable due to the harm that testifying would cause, and because the statements were reliable and trustworthy, as the officer was trained to use appropriate interviewing techniques with children. The respondent argued that it would be a violation of her confrontation rights under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), because the petitioner had not proven that the children were unavailable. The father asserted that there was a necessity for the hearsay statements because the therapist had stated that testifying would make the children feel guilty and would pit them against each other. The court observed that it would not be in the children's best interests to subject them to cross-examination in a contested hearing and allowed the children's statements to be admitted for the truth of the matter asserted under the residual exception to the hearsay rule. The court found that there was a reasonable necessity for the admission of the children's statements and that they were supported by guarantees of reliability and trustworthiness. The court allowed the police report into evidence over the respondent's objection.[5]

The petitioner also offered into evidence as a business record a report of suspected child abuse-neglect form that Skop submitted to the department. The respondent objected that the form "contain[ed] hearsay statements, subject to the normal exception as hearsay from the [children]." The court overruled the objection.

During the testimony of Dupuis, the petitioner offered a report of suspected child abuse-neglect form dated September 4, 2001, and signed by Brendon Moriarty, a family relations counselor. Dupuis testified that family relations counselors are mandated reporters and that

---

[5] There was no discussion by any party of the father's statements in the police report. Therefore, the court made no ruling as to the admissibility of those statements.

such reports are regularly kept in the course of business at the department. The respondent objected to the admission of the form, stating that the business record foundation had not been met, the document contained hearsay statements, the incident was too remote to be relevant, the evidence was prejudicial to the current matter and the document had not been properly authenticated by the creator. The petitioner argued that the foundation had been laid, that there was no hearsay in the form and that it was relevant to the disposition to show that the current allegations were not stemming from an isolated incident. The court overruled the objection and admitted the form as a full exhibit. Written on the form under a request to describe how the reporter gained knowledge of the alleged injuries, maltreatment or neglect is "[the respondent] was arraigned in court on charges of risk of injury to minor reckless endangerment 1st breach of peace."

The petitioner then offered Dupuis' social worker affidavit into evidence as a business record. The petitioner also argued that the affidavit was proper under General Statutes § 46b-129, which allows affidavits to be admitted for orders of temporary custody, provided the witness is available for cross-examination. The petitioner stated that the children's statements within the affidavit were offered for the truth of the matter asserted, that the parents' statements were being offered to show that the parents "had stated those things" and that any other hearsay statements would not be offered for the truth of the matter asserted but merely as a basis for the department's decision to pursue the order of temporary custody. The respondent objected that she had not been afforded the right to cross-examine with respect to the statements allegedly made by William B. or the children and that there was outdated material contained in the affidavit that did not have a proper foundation. The petitioner reiterated that

William B.'s statements were not offered for the truth of the matter asserted and stated that the older material was part of the department file and, thus, properly admissible under the business records exception. The court overruled the objection.

The petitioner also sought to introduce Dupuis' investigation protocol, a document completed during her investigation. The petitioner offered the protocol as a full exhibit under the business records exception to the hearsay rule. The children's statements within the document were offered for the truth of the matter asserted, but all other hearsay statements were offered as the basis on which the department conducted its investigation. The respondent objected to the father's statements, William B.'s statements and the children's statements on the ground that she could not cross-examine those parties regarding their statements. The court overruled the objection and admitted the protocol as a full exhibit.

The petitioner also introduced Dupuis' testimony of statements the children made to her while she transported them. Dupuis testified that Tayler told her that she did not feel safe. When the respondent objected on hearsay grounds, the petitioner argued that the residual hearsay exception applied and that Dupuis had been testifying about Tayler's demeanor and not even necessarily as to an out-of-court statement. The court overruled the objection. Dupuis then testified that Tayler talked to her about not feeling safe in the respondent's home. Dupuis then testified that Nicholas' testimony was consistent with Tayler's statements "around domestic violence, around substance abuse [and] not feeling safe in [the respondent's] home."

During cross-examination by the father, Dupuis testified that the children told her that they were very happy to live with their father, that they felt safe, that they

were glad they were not going back to the respondent's house and that they did not want to go back to the respondent's house. The respondent objected and asked that the testimony be stricken on the basis of hearsay. The court overruled the objection. Dupuis continued to testify that the children talked in general about feeling unsafe at the respondent's house and that William B. made them nervous. The respondent again objected to the hearsay, and the court overruled the objection.

The petitioner's next witness, Dr. Mantell, had created two documents, a summary report dated April 20, 2005, and a full psychological report dated July 11, 2005. The petitioner offered both documents as full exhibits. The respondent objected to the summary report because it contained hearsay, and the declarants were under no business duty to make the statements. The respondent also argued that the summary was cumulative of the full report. The petitioner stated that she was not sure what statements were being objected to but that Mantell's opinions could be based on otherwise inadmissible hearsay. The petitioner argued, therefore, that any out-of-court statements were admissible as the basis of his opinion. The court overruled the objection. The respondent then objected to the full report "on the same grounds, that it contain[ed] numerous out-of-court hearsay statements not subject to the business record exception." She added that she would not be able to cross-examine the declarants. The petitioner argued that the respondent was free to subpoena the individuals. The court overruled the objection.

The petitioner sought to introduce a case status report dated September 28, 2005, as a business record through Lisa Butler, a department social worker. The respondent objected on the ground that it was not a proper business record because it contained hearsay statements of declarants who had no duty to report.

The petitioner asserted that the statements in the report were either given as a basis for the petition or already were before the court as evidence. When asked by the petitioner to specify which statements she objected to, the respondent said that she did not have the document in front of her and could submit a redacted version later. The petitioner again offered the status report as a full exhibit. The court overruled the objection and admitted the case status report as a full exhibit. The respondent then added that she was prejudiced because she could not cross-examine the declarants of the statements in the document. The court again overruled the objection.

The petitioner offered a social study into evidence through Keri Ramsey, a department social worker. The respondent objected because hearsay statements of the children and others were contained in the study. The petitioner clarified that other than the statements made by the parents or children, any hearsay statement contained in the study was not offered for the truth of the matter asserted but as a foundation for the department's recommendations. The court overruled the objection.

A

First, the respondent claims that the court improperly admitted hearsay evidence of the children's statements under the residual exception to the hearsay rule. The challenged evidence is the children's statements contained in the police report, the report of suspected child abuse-neglect dated December 9, 2004, Dupuis' social worker affidavit, the investigation protocol, the testimony of Dupuis, Mantell's summary report, Mantell's psychological report, the department case status report dated September 28, 2005, and the department social study.

As a preliminary matter, we must determine whether the respondent preserved her claims for appellate

review. Our Supreme Court has stated: "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

The residual exception[6] to the hearsay rule provides: "A statement that is not admissible under any of the foregoing exceptions is admissible if the court determines that (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is

---

[6] Although we note that the recent addition to the Code of Evidence, § 8-10, addresses the admissibility of hearsay evidence in juvenile cases, § 8-10 (a) limits its application to statements "concerning any alleged act of sexual assault or other sexual misconduct of which the child is the alleged victim, or any alleged act of physical abuse committed against the child by the child's parent, guardian or any other person then exercising comparable authority over the child at the time of the act . . . ." Amendments to the Connecticut Code of Evidence, Connecticut Law Journal, Vol. 70, No. 4 (July 22, 2008) p. 159B.

Section 8-10 (c) provides in relevant part that "[t]his section does not prevent admission of any statement under another hearsay exception. Courts, however, are prohibited from:

"(1) applying broader definitions in other hearsay exceptions for statements made by children . . . *concerning any alleged act described in the first paragraph of section (a)* . . . and

"(2) admitting by way of a residual hearsay exception *statements described in the first paragraph of section (a).*" (Emphasis added.) Id., p. 160B. Thus, this rule of evidence, even had it been in force at the time this case was heard, could at most apply only to the statements of the children concerning the one incident in which William B. grabbed Tayler by the shoulders and walked her to her room.

supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule."[7] Conn. Code Evid. § 8-9. A statement is reasonably necessary if "unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." (Internal quotation marks omitted.) *In re Jason S.*, 9 Conn. App. 98, 106, 516 A.2d 1352 (1986). This court has stated that the residual exception "is particularly well suited for the admission of statements by victims of child abuse and has been used in federal and state courts for this purpose. . . . The victims are

---

[7] The respondent, however, limited her objections at trial to the unavailability of the children. As such, she has waived her objection to the court's determination that the statements were supported by adequate guarantees of reliability and trustworthiness. See *State* v. *Cabral*, supra, 275 Conn. 530–31. However, as the dissent suggests that the residual exception is more appropriately employed in cases in which there is corroboration of the unavailable declarants' statements, we will briefly address the corroborating evidence.

During Mantell's interview with the respondent and the children, the respondent admitted that during the incident that led to the department's involvement, she had been sitting on the couch when William B. walked Tayler to her room. The respondent told Mantell that William B. physically put his hands on her shoulder and said, "you are not going to talk like this, and you are going to your room." In response to Nicholas' statement that the respondent locked Tayler's door, the respondent responded that it was because Tayler tried to get out.

The respondent testified that "[Tayler] was walked down the hallway to her room" by William B. and the respondent, and that the respondent "didn't know what to do" and that the respondent's mother "had come over the house to pick up the kids and maybe let things rest and calm down a little bit." When asked about her alcohol consumption with William B. in front of the children, the respondent testified: "I mean have a glass of wine. We'll have beer when we're watching the game or whatever, but I mean, I don't think it's to the point of falling down, intoxicated drunk." The respondent also admitted that there was a lock on Tayler's bedroom door because "she would try to get out all the time because she had ADH" and that after Tayler was placed in her room, William B. "possibly had locked the door."

often unable to testify and their statements are often inadmissible . . . under other exceptions to the hearsay rule." (Citations omitted.) *State* v. *Dollinger*, 20 Conn. App. 530, 540–41, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990).

Because we determine that the respondent did preserve her claim that the children's statements were inadmissible hearsay for at least one piece of admitted evidence, that the petitioner consistently offered the children's statements for the truth of the matter asserted under the residual exception to the hearsay rule and that the statements were admitted under that exception, we address the admissibility of the children's statements en masse. For the respondent to prevail on her claim that the children's statements were admitted improperly, she must show that the court abused its discretion by finding that Tayler and Nicholas were unavailable. See *State* v. *Wright*, 107 Conn. App. 85, 89, 943 A.2d 1159, cert. denied, 287 Conn. 914, 950 A.2d 1291 (2008).[8]

---

[8] Following oral argument, this court offered the parties the opportunity to brief the application of *Crawford* v. *Washington*, supra, 541 U.S. 36, and General Statutes § 46b-135 (b) to the hearsay statements of the children. The United States Supreme Court in *Crawford*, however, was concerned with the rights afforded a defendant in a criminal trial. *Crawford* v. *Washington*, supra, 38.

This court has previously held that "[n]either the sixth amendment to the United States constitution nor article first, § 8, of the Connecticut constitution can be extended to a parent in a termination of parental rights hearing . . . . It, therefore, cannot logically be extended to a neglect hearing. The respondent's rights to confrontation and cross-examination here are not constitutional rights, but rather statutory ones." (Citation omitted; internal quotation marks omitted.) *In re Noel M.*, 23 Conn. App. 410, 421, 580 A.2d 996 (1990). Thus, the right to confrontation as set forth in *Crawford*, which applies to the sixth amendment rights of an accused, does not extend to a parent in a neglect hearing. See id.

A parent's statutory right to confrontation is found in § 46b-135 (b), which provides: "At the commencement of any proceeding on behalf of a neglected, uncared-for or dependent child or youth, the parent or parents or guardian of the child or youth shall have the right to counsel, and shall be so informed by the judge, and that if they are unable to afford counsel, counsel will be provided for them, and such counsel and such parent or guardian of the child or youth shall have the rights of confrontation and cross-examination."

There was an adequate basis for the court's ruling that the children were unavailable to testify. The petitioner and the father made offers of proof that the children's therapist would testify that the children would suffer emotional harm if forced to testify. Specifically, the father offered that the therapist stated that testifying would make the children feel guilty and would pit them against each other. The court also heard Skop's testimony that Nicholas became visibly upset and began to cry when simply asked about the occurrence of domestic violence in the respondent's home. Finally, the court observed that Tayler was twelve years old and Nicholas was ten years old. The court stated: "I cannot believe that it would be in the best interests of the children to subject them to this contested hearing and cross-examination and put them squarely in the middle between [the respondent] and their father. I think that I would not be serving their best interests. . . . I'm going to allow the children's statements to be for the truth of the matter asserted under the residual exception to the hearsay rule, that there is a reasonable necessity for the admission of their statement." On the following day of trial, as discussed in part I, Mantell satisfied the offer of proof, testifying that the children would suffer harm if forced to testify.

We conclude that the court properly admitted the children's statements under the residual exception to the hearsay rule. The court was presented with sufficient information to decide that the children would be

---

This court has previously stated that it is not a violation of § 46b-135 (b) to exclude the testimony of a child victim of abuse when her statements to a police officer were admitted and requiring the child to testify would be harmful to the child. *In re Lauren R.*, 49 Conn. App. 763, 778–80, 715 A.2d 822 (1998). After consideration of the briefs and the record in this case, we have determined that the respondent's rights were not violated by the admission of the children's statements under the residual exception to the hearsay rule. See id.

harmed if called to testify against the respondent in a contested hearing. Thus, the court did not abuse its discretion by admitting the children's statements included in the police report, the report of suspected child abuse-neglect dated December 9, 2004, the social worker affidavit, the investigation protocol, the testimony of Dupuis, Mantell's summary report, Mantell's psychological report, the department case status report dated September 28, 2005, and the department social study.[9]

## B

The respondent also claims that the court improperly admitted hearsay evidence of the father's statements. Specifically, she claims that the court improperly admitted five documents without redacting the father's out-of-court statements: Skop's police report, the department case status report, the department social study, Mantell's summary report and Mantell's psychological report.[10]

---

[9] We are mindful of the public policy to protect children from being the fulcrum of custodial disputes and child protection cases. See Practice Book § 32a-4 (b) ("[a]ny party who intends to call a child as a witness shall first file a motion seeking permission of the judicial authority"); *Gennarini* v. *Gennarini*, 2 Conn. App. 132, 139–40, 477 A.2d 674 (1984) ("The rules of evidence are somewhat relaxed in trials having to do with a determination of custody of [or visitation with] an infant where it is necessary to learn of the child's psychology and preferences. Therefore it is sometimes pertinent to bring to the court's knowledge the temperament, disposition and reactions of the child by testimony that borders upon hearsay in that it embraces a recital of the child's remarks. Such testimony, however, is not strictly hearsay because the objective and the result are to look into the child's mind and not to establish the truth or falsity of other matters set up as facts." [Internal quotation marks omitted.]).

[10] The respondent also claims that the court improperly admitted Dupuis' affidavit and investigation protocol. Assuming that the claims by the respondent were preserved at trial, they all address the hearsay nature of the father's statements. The father's statements included in those documents, however, were not hearsay because they were not offered by the petitioner to prove the truth of the matter asserted. See *State* v. *Calabrese*, 279 Conn. 393, 409, 902 A.2d 1044 (2006).

First, the respondent asserts that the court improperly admitted Skop's police report, Mantell's summary report, Mantell's psychological report and the department case status report dated September 28, 2005, without redacting the statements of the father.

When the petitioner offered the police report into evidence as a business record, the respondent objected on hearsay grounds to "numerous hearsay statements" and argued at length that the children's statements within the report should not be admitted. At no point, however, did the respondent reference or object to the father's statements to Skop contained in the report. We must therefore conclude that the respondent failed to preserve her objection to the father's statements contained in the police report.[11]

The petitioner offered Mantell's summary and psychological reports as business records and as the factual basis for his expert opinion. The respondent objected to the hearsay statements contained within the summary report that were made by declarants with no business duty to report the document information. She also claimed that the summary report was cumulative.[12] The petitioner stated that she was unsure what statements

[11] The respondent repeatedly requests review of her claims under the plain error doctrine but does no more than cite the applicable provision of the rules of practice. See Practice Book § 60-5. We note, however, that "we will not review an underlying claim for plain error unless the request for relief under that doctrine has been adequately briefed. . . . A party claiming plain error must engage in a separate analysis under that doctrine to demonstrate that plain error has occurred under the circumstances of [the] case. . . . Indeed, a mere conclusory assertion of plain error is insufficient to allow this court to reach the merits of an unpreserved claim under that doctrine." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 266 n.69, 828 A.2d 64 (2003).

[12] The respondent did not raise this claim on appeal, and, therefore, we treat it as abandoned. See *QuesTech Financial, LLC* v. *Benni's, LLC*, 105 Conn. App. 749, 752 n.1, 939 A.2d 1220, cert. denied, 287 Conn. 916, 951 A.2d 567 (2008).

the respondent objected to but asserted that any out-of-court hearsay statements in the report were admissible as the factual basis of Mantell's opinion. The respondent did not clarify which statements she objected to, and the court overruled her objection. The respondent did, however, add that she also objected to the psychological report on the same grounds—that it contained numerous out-of-court hearsay statements not subject to the business record exception. The court overruled the objection.

The respondent did not state with any specificity which parts of the reports she believed were inadmissible hearsay. Thus, the petitioner was not given the opportunity to argue which hearsay exception applied to which statement; the respondent did not "alert the trial court to potential error while there [was] still time for the court to act." (Internal quotation marks omitted.) *State* v. *Cabral,* supra, 275 Conn. 531. Indeed, it is unclear which statements the court admitted as substantive evidence and which statements were admitted merely as a factual basis of the evaluator's opinion. Without a sufficient record of the court's rulings, we are left to speculate. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *Jezierny* v. *Jezierny,* 99 Conn. App. 158, 160–61, 912 A.2d 1127 (2007). Thus, we decline to review this claim.[13]

---

[13] The respondent also claims that the court improperly admitted the hearsay statements of Melissa D. and William B. in Mantell's summary and psychological reports. Similarly, we decline review of this claim because the respondent failed to preserve it properly.

The respondent also objected when the petitioner offered the department case status report into evidence as a business record. The respondent objected to its admission because "there are hearsay statements of people who allegedly said numerous things. They had no duty to report those—that information." The petitioner asked that the respondent specify the statements objected to, commenting that the information in the report was already admitted as evidence. The respondent's counsel responded, "I don't have that document in front of me currently, and I had asked that I be able to submit my redacted version with the hearsay statements redacted." The respondent's objection was not effective because "[i]n objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Internal quotation marks omitted.) *State* v. *Stephen O.*, 106 Conn. App. 717, 722, 943 A.2d 477, cert. denied, 287 Conn. 916, 951 A.2d 568 (2008). The respondent failed to apprise the court adequately as to what statements by which declarants she objected. We therefore decline to review her claim.

Second, the respondent claims that the court improperly admitted as a business record the department social study containing the father's statements.[14] The respondent does no more than assert that the father "did not have any duty to report said information contained within" the social study.[15] It is unclear, however, what

[14] We note that the social study was admissible for disposition purposes; "no disposition may be made by the judicial authority until any mandated social study has been submitted to the judicial authority. Said study shall be marked as an exhibit subject to the right of any party to require that the author, if available, appear for cross-examination." Practice Book § 35a-9.

[15] In addition, the respondent stated as the basis for her objection at trial only that "[t]here's other people—there's statements in there that have no duty to report; so, it doesn't fall within the business exception to the hearsay rule."

information within the social study was objected to at trial. Because the respondent has inadequately briefed this claim, we decline to afford it review. See *Moran* v. *Media News Group, Inc.*, 100 Conn. App. 485, 506, 918 A.2d 921 (2007).

C

The respondent claims that the court improperly admitted hearsay evidence of several other persons' statements. Specifically, she claims that the court improperly admitted the hearsay statements by an unknown declarant in the report of suspected child abuse-neglect dated September 4, 2001, and the statements of several declarants in Dupuis' affidavit.

The respondent first claims that the court improperly admitted hearsay statements by an unknown declarant in the report of suspected child abuse-neglect form dated September 4, 2001. The respondent claims that the report improperly was admitted as a business record.[16] We agree but find that the admission was harmless.

The business record exception "is derived from the recognition that the trustworthiness of such documents comes from their being used for business purposes and not for litigation." *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 375, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999). Business records are excepted from the hearsay rule when three conditions are met: (1) the records are made in the regular course of business, (2) it is the regular course of the business to make such records and (3) the records were made at the time of the incident described in the record or shortly thereafter. *State* v. *George J.*, 280

---

[16] The respondent also asserts that the document was not authenticated and that it was irrelevant and prejudicial. Because we find that the document was admitted improperly as a business record but that its admission was harmless, we decline to review these claims.

Conn. 551, 593, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). The information contained in the record, however, "must be based on the entrant's own observation or on information of others whose business duty it is to transmit it to the entrant. . . . If the information does not have such a basis, it adds another level of hearsay to the [record] which necessitates a separate exception to the hearsay rule in order to justify its admission." (Internal quotation marks omitted.) Id., 593–94.

The petitioner argues that the information in the report did not support a conclusion that it was based on information provided to the family relations officer. The report states, however, that the officer obtained the information because the respondent was arraigned on charges stemming from the alleged incident. Even if the officer was present at the arraignment, what was said at the arraignment was hearsay. Thus, the court abused its discretion by ruling that the information in the report was admissible under the business record exception to the hearsay rule. The respondent, however, cannot show that any harm resulted from the erroneous admission. See *In re Stacy G.*, supra, 94 Conn. App. 353. Melissa D., a witness to all of the events discussed in the report, testified about all of the allegations in the report. The court explicitly credited the testimony of Melissa D. about the incident. In addition, overwhelming evidence was admitted properly to show that the children were neglected. The respondent has failed to prove that the impropriety was harmful error. See id.

The respondent also claims that the court improperly admitted the statements of several declarants in Dupuis' affidavit. Even if we assume that the claims by the respondent were preserved at trial, they address the hearsay nature of those statements. Those statements, however, were not hearsay because they were not

offered by the petitioner to prove the truth of the matter asserted. See *State* v. *Calabrese*, 279 Conn. 393, 409, 902 A.2d 1044 (2006).

## III

Finally, the respondent claims that the court improperly admitted evidence of the children's credibility. Specifically, she claims that the court improperly permitted Dupuis and Mantell to testify about the children's credibility.

Additional facts and procedural history are necessary to resolve the respondent's claim. During direct examination by the petitioner, Dupuis testified that Tayler was "up front" with her and articulate, making statements such as, "I don't feel safe." The respondent objected on hearsay grounds. The petitioner argued that Dupuis was testifying as to Tayler's demeanor when she responded to questions. The court overruled the objection. Dupuis also testified that Tayler was "spontaneous" and "was willing to speak to [Dupuis] about what her concerns—what her worries were. What her— that she didn't feel safe." Dupuis continued, stating that Tayler "stayed consistent. She used age appropriate words. . . . I didn't get the inclination at all that she was coached or put up to this. She wasn't aware of my visit to the school. That was—that was for Tayler." The respondent did not object to that testimony.

When Dupuis began to discuss Nicholas, the respondent objected that no question had been posed regarding his demeanor. The petitioner conceded the point and asked Dupuis to describe Nicholas' willingness to share information with her. Dupuis testified that Nicholas was "younger. He was more hesitant, more unsure of himself. But he was articulate. He also told me about concerns. When he seemed to be getting upset, we ceased the interview. . . . He came back willing and

prepared to give consistent statements to—that his sister had." Dupuis continued that "he said consistent things that his sister had said to me when I had interviewed her around domestic violence, around substance abuse, around himself not feeling safe in [the respondent's] home." Dupuis then testified that the children's statements to her were consistent with their statements in Skop's police report and that she did not see any signs of coaching in Nicholas. The respondent made no objections to this testimony.

The petitioner asked Dupuis what signs she looks for during interviews to determine that a child has not been coached. Dupuis stated some of the hallmarks that she looks for, then commented that Tayler "was very spontaneous. She added things on her own without me having to—to conversate with her. . . . [T]here was things that she added to her own interview that I didn't ask for." Dupuis added that "Nicholas did that to a degree, but not as much as his sister did." Dupuis continued, stating that Tayler "was very willing, very spontaneous to offer things that made her feel unsafe. She elaborated on certain circumstances, and her description of certain things were very—is what I would have expected for her age. Very basic, very simple." The respondent did not object to this testimony.[17]

During cross-examination, the father's counsel asked Dupuis if Nicholas or Tayler had given her any answers that led her to believe they were coached. Dupuis responded, "[a]bsolutely not. Just the opposite. I felt that they were very, very credible, very, very honest." The respondent objected and moved to strike the answer. The court sustained the objection as to credibility. After several questions about other interviews Dupuis had conducted, the following colloquy occurred:

---

[17] The respondent did object to one question as leading, and the court permitted the petitioner to rephrase the question.

"[The Father's Counsel]: Your Honor, I need to go back to that question that I just asked and you sustained the objection to. And I would ask at this time that Ms. Dupuis be qualified as an expert in investigative techniques in child protection proceedings.

"The Court: That's different than credibility.

"[The Father's Counsel]: Excuse me?

"The Court: It's different than credibility.

"[The Father's Counsel]: I want to—just go into that line of questioning a little bit more. Maybe take it out of the credibility—the issue.

"The Court: All right."

The father's counsel then asked Dupuis if Nicholas and Tayler had given her a reason to believe that they were not telling the truth. After Dupuis answered that they had not, the respondent objected, stating that the testimony "goes to the credibility. That's a determination of the fact finder." The father's counsel argued that she asked only if Dupuis had any reason to believe whether they were telling her the truth and that the court could "take it from there and make a finding of [its] own of whether [the] children were credible based on Ms. Dupuis' testimony and the other testimony offered to the court." The court overruled the objection.

During cross-examination by the children's attorney, Dupuis again testified that Nicholas' and Tayler's accounts were consistent with each other. The respondent did not object to that testimony.

Dr. Mantell was qualified in this case as an expert in child protection and forensic psychology. Mantell testified that as a court-ordered evaluator, he evaluated the respondent, the father, the children, Melissa D., Bonnie R. and William B. Mantell testified that he saw the children on February 23, March 9 and June 30, 2005.

The petitioner offered two reports that Mantell had created, a summary report and a full psychological report, and the respondent objected on the ground of hearsay and because the reports were cumulative.[18] The court overruled the objection. The summary report states: "The children showed normal range behavior to me. They were credible about the substance abuse, domestic violence and neglect issues in [the respondent's] home. I did not think that [Tayler] was accurate about all she says in regard to the evening in question and suspect she may well have disobeyed [the respondent] and gone outside. [Tayler] admits to the use of coarse and disrespectful language with [William B]." The report concludes: "I found the children generally credible. . . . [Tayler's] credibility on some issues is weak and she appears to exaggerate on some points." The psychological report, a thirty-two page document, includes an "interim impression" that Mantell "found the children credible about the history of substance abuse and domestic violence in [the respondent's] home."

Mantell was asked by the petitioner for a clarification of his statement in the summary report that he found the children generally credible. The respondent objected that the question "goes to the credibility of the witness . . . . That's for the fact finder, not Dr. Mantell. They're not in court to testify." The petitioner's counsel stated that he was asking Mantell to clarify his testimony about the conflicting versions of the facts given by the respondent and the children in light of his statement in the report that was already in evidence. The court overruled the objection. Mantell then testified: "I came to my conclusions based upon the preponderance of evidence that I received from the multiple information sources that I had, most of which was the

---

[18] The respondent did not mention or object to Mantell's conclusions about credibility.

parties I was asked to talk to. And then also collateral documents. There was one issue on which I believed the [respondent] more than I believed Tayler, and also in part because [Nicholas] did not seem to support his sister on that issue. And that issue was, did she or did she not go outside that night. She claimed she hadn't; the [respondent] and [William B.] claimed she had. On virtually all the other significant issues to me, I thought that the totality of evidence supported the children's complaints, and that includes my own direct experience with the parties, in talking to them and observing their behavior, and in the test results that I got from them."

The respondent claims that the court abused its discretion by permitting Dupuis and Mantell to testify about the ultimate issue in the case, the children's credibility. We agree with the respondent and the dissent that the court abused its discretion when it permitted Dupuis and Mantell to testify about the children's credibility; however, we find the error harmless.

It is well established that "[e]xpert witnesses cannot be permitted to invade the province of the [trier of fact] by testifying as to the credibility of a particular witness or the truthfulness of a particular witness' claims. . . . [E]ven indirect assertions by an expert witness regarding the ultimate issue in a case can serve inappropriately to validate the truthfulness of a victim's testimony." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Carreiro*, 94 Conn. App. 626, 630, 894 A.2d 993, cert. denied, 278 Conn. 914, 899 A.2d 620 (2006). This rule applies to out-of-court declarants as well as in-court witnesses. *State* v. *Calabrese*, supra, 279 Conn. 407–408 (Connecticut Code of Evidence § 8-8 applies to declarant standard rules for impeachment and support after impeachment applicable to witnesses). "A claim that the court improperly admitted the testimony of an expert, however, is an evidentiary impropriety [that is]

not constitutional in nature . . . [and thus] the defendant bears the burden of demonstrating harm." (Internal quotation marks omitted.) *Doe* v. *Carreiro*, supra, 638.

Dupuis' testimony during cross-examination that the children had not given her a reason to believe that they were not telling the truth was clearly testimony regarding their credibility. We find, however, that the admission of the testimony was harmless because the evidence admitted without objection during her direct examination was both more comprehensive and more specific. In addition, during cross-examination, the father's counsel argued and the court agreed that she was asking Dupuis only about her observations and that the court could decide for itself whether the children were credible.

Mantell's testimony that his observations and experience with the parties led him to believe that the children were generally credible also invaded the province of the trier of fact. Again, however, we must find that the error was harmless because Mantell was simply reiterating a conclusion that had already been admitted without objection in each of his reports. In addition, the information from which Mantell drew his conclusions was also admitted into evidence for the court to evaluate.

Finally, we note that "in court trials, judges are expected, more so than jurors, to be capable of disregarding incompetent evidence." Id., 640. Indeed, the court had already determined that the children's out-of-court statements were supported by "guarantees of reliability and trustworthiness." Thus, although the court abused its discretion in permitting testimony regarding the children's credibility, the impropriety was harmless.

The judgments are affirmed.

In this opinion HARPER, J., concurred.

LAVERY, J., dissenting. I respectfully dissent from the opinion of the majority because of fundamental improprieties that occurred during the complex proceedings at trial. I cannot look at the claimed improprieties in distinct parts, as the majority has, because the improprieties are interrelated and overlapping. The trial court abused its discretion in allowing uncorroborated hearsay evidence of the children's claims through the residual exception to the rule against hearsay without any testimony on the mindset of the children, the effects on them were they to testify or the reliability of the statements prior to its ruling on the admissibility. In addition, the court abused its discretion in allowing witnesses to testify as to the credibility of the children with respect to the hearsay statements. The hearsay was then admitted prior to the testimony of a court-appointed therapist regarding the harmful effects on the children and their credibility. This testimony was even more problematic because the therapist had not been instructed by the court to make a determination on the matter of the children's ability to testify. It is clear that the court used this hearsay evidence and bolstered the statements of the children in order to find that there had been a "multitude of independent sources of credible evidence" that the respondent mother's[1] actions within the home had been neglectful to the children.

I agree with the majority on the standard of review for evidentiary challenges. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Additionally, it is well settled that even if the evidence was improperly admitted, the respondent must

---

[1] See footnote 1 of the majority opinion.

also establish that the ruling was harmful and likely to affect the result of the trial." (Citation omitted; internal quotation marks omitted.) *In re Latifa K.*, 67 Conn. App. 742, 751–52, 789 A.2d 1024 (2002). Another important standard to acknowledge concerns when the residual exception may be used. The court must determine that "(1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by equivalent guarantees of trustworthiness and reliability that are essential to other evidence admitted under traditional exceptions to the hearsay rule." Conn. Code Evid. § 8-9. Reasonable necessity is established by showing that "unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources." *State* v. *Sharpe*, 195 Conn. 651, 665, 491 A.2d 345 (1985); Conn. Code Evid. § 8-9, commentary.

The case law that the majority and the trial court use to decide this case are readily distinguishable, and the case at bar should be considered in light of the distinguishing characteristics. In *State* v. *Jarzbek*, 204 Conn. 683, 687–88, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), the videotape of the four year old victim's testimony and cross-examination was admitted. In *State* v. *Dollinger*, 20 Conn. App. 530, 541, 568 A.2d 1058, cert. denied, 215 Conn. 805, 574 A.2d 220 (1990), the victim was twenty-eight months old, and there was corroboration of sexual abuse from a physical examination of the child. *State* v. *Aaron L.*, 79 Conn. App. 397, 420, 830 A.2d 776 (2003), aff'd, 272 Conn. 798, 865 A.2d 1135 (2005), is vastly different because the court allowed under the residual exception hearsay statements made by the victim when she was two years old that she could not remember at the time of trial ten years later. Unlike these cases, in

the present case there are no allegations or evidence, even with the most extreme hearsay, of any physical assault on the children.

In this case, not only are there differences in the ages and the situations of the victims, but the court had no proper foundation to make a determination of whether the children were unavailable. The court had never met with the children, and no expert testified before the hearsay was admitted in full. In fact, the court did not even consider the full offer of proof from the attorney for the father before making its ruling:

"[The Father's Counsel]: [T]he therapist thinks it would be very detrimental to the children to have to come in here and testify. And I think that's the only other alternative, quite frankly, is to put them in here on the [witness] stand or to have a hearing in Your Honor's chambers where you can question the children and, if you find it's necessary, we could submit written questions that Your Honor could ask the children. . . .

"The Court: Well, these are children who—Tayler is twelve? Is that right? And Nicholas is ten? . . . . I cannot believe that it would be in the best interests of the children to subject them to this contested hearing and cross-examination, and put them squarely in the middle between [the respondent] and their father. I think that I would not be serving their best interests. . . . I'm going to allow the children's statements to be for the truth of the matter asserted under the residual exception to the hearsay rule, that there is a reasonable necessity for the admission of their statement. And it's supported by the . . . guarantees of reliability and trustworthiness. So, I'm going to allow it in over your objection."

Counsel for the father made suggestions that show that the children were available to testify but in a limited capacity as to lessen the impact on them. She suggested

questioning the children in chambers or having the court ask questions of the children. This case does not fall within the rare instances that the residual exception is meant to cover, and it was an abuse of the court's discretion to make such a quick decision without a full hearing on the matter where it is evident that it harmed the respondent. Further, the court found only that there was reasonable necessity, without explaining why and without finding that the children were unavailable. In its memorandum of decision, the court wrote: "The court finds that there has been a multitude of independent sources of credible evidence that the children, while in the care of the [respondent], have been subjected to witnessing domestic violence between the [respondent] and her live-in boyfriend, William B. In addition, while residing with the [respondent], the children have witnessed a significant physical altercation between William B. and another individual named Chico. In addition, while living with the [respondent], the children were subjected to both verbal and physical abuse at the hands of the [respondent] and her boyfriend, William B.

"The court finds credible evidence that the children witnessed substance abuse by the [respondent] and her boyfriend, William B. The [respondent] has placed her relationship with [William] B. over the safety and well-being of her two children and has not provided proper supervision for the two children while they have been in her care. It is to the [respondent's] credit that she has sought counseling with Dr. [Elizabeth] Ayes to seek to improve her life. The court also finds credible evidence that the children, who have been living with the father for almost two years, have an excellent relationship with him and are doing well while in his care with no child protection concerns existing that would necessitate further involvement by the department of

children and families." There was no independent, corroborating evidence of the alleged abuse that the children encountered and the situations they claimed to others that they were placed in.

The majority cites case law that states, regarding the residual exception, that "the exception . . . is particularly well suited for the admission of statements by victims of child abuse and has been used in federal and state courts for this purpose." *State* v. *Dollinger*, supra, 20 Conn. App. 540.[2] The majority, however, fails to recognize that the same opinion notes that "[t]his exception is not to be treated as a broad license to admit hearsay inadmissible under other exceptions, and is to be used *very rarely* and only in *exceptional circumstances*." (Emphasis added.) Id. The case was not an exceptional circumstance, and the use of hearsay suggests that the residual exception is now being used for more than the rare instance when the evidence would otherwise be lost.

There are more prevalent views within the judiciary and the bar that the use of the residual exception in child abuse and neglect cases as well as in criminal cases is not "particularly well suited." One notable opinion is that the residual exception "should not be used for 'near misses' or for a category of situations that cannot be made to fit into traditional exceptions, such as statements of children in child abuse cases." C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.52.2, p. 743. At the June 30, 2008 Annual Meeting of the Judges of the Superior Court, Justice Katz, as chairwoman of the code

---

[2] It is interesting to note that this court in *Dollinger* cites generally a note entitled "A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases," 83 Colum. L. Rev. 1745 (1983), that recommends a more stringent approach than that adopted by Connecticut to using children's hearsay statements in abuse cases. See *State* v. *Dollinger*, supra, 20 Conn. App. 540–41; K. Gregoire, "A Survey of International Hearsay Exceptions in Child Sex Abuse Cases: Balancing The Equities in Search of A More Pragmatic Rule," 17 Conn. J. International L. 361, 371–75 (2002).

of evidence oversight committee, presented to the judges a tender years exception to the hearsay rule.[3] In

[3] The recent addition to § 8-10 of the Code of Evidence provides: "Hearsay Exception: Tender Years:

"(a) A statement made by a child, twelve years of age or under at the time of the statement, concerning any alleged act of sexual assault or other sexual misconduct of which the child is the alleged victim, or any alleged act of physical abuse committed against the child by the child's parent, guardian or any other person then exercising comparable authority over the child at the time of the act, is admissible in evidence in criminal and juvenile proceedings if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the circumstances of the statement, including its timing and content, provide particularized guarantees of its trustworthiness;

"(2) The statement was not made in preparation for a legal proceeding; and

"(3) The child either:

"(A) Testifies and is subject to cross-examination in the proceeding, either by appearing at the proceeding in person or by video telecommunication or by submitting to a recorded video deposition for that purpose; or

"(B) Is unavailable as a witness, provided that:

"(i) There is independent corroborative evidence of the alleged act. Independent corroboration does not include hearsay admitted pursuant to this section; and

"(ii) The statement was made prior to the defendant's arrest or institution of juvenile proceedings in connection with the act described in the statement.

"(b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his or her intention to offer the statement, the content of the statement, the approximate time, date, and location of the statement, the person to whom the statement was made, and the circumstances surrounding the statement that indicate its trustworthiness. If the statement is in writing, the proponent must provide the adverse party a copy of the writing; if the statement is otherwise recorded by audiotape, videotape, or some equally reliable medium, the proponent must provide the adverse party a copy in the medium in the possession of the proponent in which the statement will be proffered. Except for good cause shown, notice and a copy must be given sufficiently in advance of the proceeding to provide the adverse party with a fair opportunity to prepare to meet the statement.

"(c) This section does not prevent admission of any statement under another hearsay exception. Courts, however, are prevented from:

"(1) applying broader definitions in other hearsay exceptions for statements made by children twelve years of age or under at the time of the statement concerning any alleged act described in the first paragraph of section (a) than they do for other declarants; and

"(2) admitting by way of a residual hearsay exception statements described in the first paragraph of section (a)." Amendments to the Connecticut Code of Evidence, Connecticut Law Journal, Vol. 70, No. 4 (July 22, 2008) p. 159B; see generally R. Marks, "Should We Believe the People Who

her presentation, Justice Katz said about the proposed exception that "[t]he commentary, I think, identifies some of the concerns why children don't fit neatly into spontaneous utterances. They don't fit in a category. They don't fit neatly into a course of treatment. And so we all know, I think, as a practical matter, what essentially happened is, it's the residual exception to the hearsay rule. Instead of being a narrow exception, it's had a truck driven through it, I think, in recognition of the difficulty in dealing with these kinds of victims." Judges of the Superior Court Annual Meeting, June 30, 2008, pp. 65–66. The vote of the judges to accept the new hearsay exception was deemed unanimous. Id., p. 68. This rule was specifically created to deal with criminal and juvenile cases, which include abuse and neglect cases. See Practice Book c. 32a. Although this exception was not in force at the time this case was heard, it is evidence that more needs to be done before hearsay is admitted. It is a recognition that a parent's rights should not be limited or taken away on the basis of uncorroborated hearsay. The case law the majority cites supports this assertion because in those instances there was corroboration or a high degree of necessity before allowing such evidence. This case was not a rare or exceptional instance, and it was an abuse of discretion to allow the children's statements in. This is a case in which the fact finders were the therapist and social workers. Their testimony on the credibility, which was wrongfully admitted, was piled onto the multitude of hearsay evidence under the residual exception to the hearsay rule, which strained the residual hearsay exception beyond all reasonable bounds. The residual exception as interpreted by the majority for all practical purposes eliminated the hearsay rule. The children were ten and twelve and by all accounts were reasonably articulate. The trial court should have, at a minimum,

Believe the Children?: The Need for a New Sexual Abuse Tenders Years Hearsay Exception Statute," 32 Harv. J. on Legis. 207 (1995).

held a hearing with the children in a reasonable setting to determine the ability of the children to testify. In my opinion, the judgments should be reversed because the respondent was denied due process under an extreme enlargement of the residual exception to the hearsay rule. In addition, I find that the credibility testimony of the experts was most harmful to the respondent.

I therefore respectfully dissent.